2012 OK CIV APP 103

Thomas KURTZ, Derrick Shoemake, Steve Kile, Jess Goins and Jim Simmons, Plaintiffs/Appellants,

v.

Don CLARK and Bruce Bradley, Defendants/Appellees,

and

Efficiency Technologies, Inc., Efftec International, Inc., James Clark and Karen Brignac, Defendants.

No. 109,175.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 16, 2012.

Brian J. Rayment, Kivell, Rayment & Francis, P.C., Tulsa, Oklahoma, for Plaintiffs/Appellants.

S. Max Harris, Doyle Harris, Davis & Haughey, Tulsa, Oklahoma, for Defendant/Appellee Bruce Bradley.

Mary Q. Cooper, Michael F. Smith, McAfee & Taft, Tulsa, Oklahoma for Defendant/Appellee Don Clark.

JOHN F. FISCHER, Chief Judge.

¶1 Thomas Kurtz, Derrick Shoemake, Steve Kile, Jess Goins and Jim Simmons (Plaintiffs) appeal an order of the district court granting summary judgment in favor of Defendants Don Clark and Bruce Bradley, an order awarding Clark and Bradley attorney fees, and denial of Plaintiffs' motion for new trial.

## BACKGROUND

¶2 This case involves a shareholders derivative suit by shareholders of Efftec International, Inc. (Efftec), who at the time of filing were also employees or contractors employed by Efficiency Technologies, Inc. (ETI), a subsidiary of Efftec. Both Efftec and ETI are incorporated in Nevada, and both corporations are authorized to conduct business in Oklahoma. The events that are the subject of this lawsuit occurred in Tulsa. During the time periods relevant to this litigation, Clark was a shareholder and officer of ETI. Bradley was a shareholder and also employed by ETI as a consultant.[1] Plaintiffs allege Defendants were attempting to set up a rival corporation using trade secrets of Efftec and ETI. Plaintiffs filed a petition alleging various theories of liability against Defendants on behalf of the corporations.[2] A portion of the dispute in this case is whether Plaintiffs made the requisite demand on the corporations to take action against Clark and Bradley prior to filing the derivative action on the corporations' behalf, and whether that demand was refused. Plaintiffs initially claimed that they had made a demand on the corporations and that the demand was refused, but later, in a motion for new trial, claimed that a demand was never actually communicated to the corporations due to misrepresentations by the corporations' former legal counsel.[3]

¶3 Plaintiffs initially obtained a temporary restraining order (TRO) on December 24, 2008, against Clark and Bradley, restraining them from destroying evidence related to the subject matter of this litigation or using or disclosing any trade secrets of the corporations. Plaintiffs sought a preliminary injunction against Clark and Bradley, but were unable to provide the undertaking required by statute. See 12 O.S.2011 § 1392. As a result, the TRO was dissolved on April 3, 2009. Certain of Plaintiffs' claims were referred to arbitration pursuant to a clause in Bradley's employment contract. On May 13, 2009, Clark filed a motion for summary judgment, which Bradley later joined, challenging Plaintiffs' standing to maintain a derivative claim. Defendants were eventually granted summary judgment on Plaintiffs' remaining claims based on the district court's finding that Plaintiffs lacked standing to pursue the claims in a derivative capacity, due to the Plaintiffs' admission that a demand had been made on the corporation to take action and the corporation refused. Plaintiffs filed a motion for new trial on January 26, 2010, seeking reconsideration of that ruling. ETI filed a motion to intervene, and motion to substitute the corporation as plaintiff in the case and to grant a new trial. The court denied ETI's motion, along with Plaintiffs' motion for new trial, on May 27, 2010. Defendants were awarded attorney fees pursuant to 12 O.S.2011 § 1384.2, based on the court's finding that the TRO ought not to have been entered against Defendants. Plaintiffs filed a second motion for new trial

1. Prior to the filing of this action, Clark was either removed or resigned from his position as a director of ETI but was retained as an employee. He later resigned from the corporation. Subsequent to the filing of this lawsuit it appears neither Defendant was employed in any capacity by the corporation, but both remained shareholders.

2. Plaintiffs alleged theories of liability based on conversion, misappropriation of trade secrets, injunctive relief, breach of contract, breach of fiduciary duty, and interference with contracts and business relations.

3. In their appellate brief, Plaintiffs continue to maintain that demand was made on the corporations to act, and that Plaintiffs brought this action when the corporations failed to do so. Plaintiffs appear to misunderstand the concept of the demand requirement in a shareholder's derivative suit, and attempt to argue both that a demand was not actually made, based on newly discovered evidence, and that a demand was made but improperly refused.

on October 25, 2010, which the court denied on January 25, 2011. Plaintiffs appeal.

## STANDARD OF REVIEW

¶4 Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." 12 O.S.2011 § 2056(C). We review the district court's grant of summary judgment *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053.

■ ¶5 We review *de novo* the question of whether a party is entitled by statute to an award of attorney fees. *McKiddy v. Alarkon*, 2011 OK CIV APP 63, ¶10, 254 P.3d 141, 145. "That is, statutory interpretation presents a question of law which is subject to a *de novo* standard of review." *Id.* (citing *Williams v. Smith & Nephew, Inc.*, 2009 OK 36, ¶8, 212 P.3d 484, 486).

## ANALYSIS

■ ¶6 On appeal, Plaintiffs challenge the district court's grant of summary judgment in favor of Defendants, the award of attorney fees and the denial of the motions for new trial. We find it necessary to address the procedural background of this case as it relates to the timeliness of Plaintiffs' appeal. "The question of jurisdictions an issue which is primary and fundamental in each case This Court must inquire into its own jurisdiction as well as to the jurisdiction of the court from which the appeal is taken, regardless of whether it is raised by the litigants." *Bailey v. Campbell*, 1991 OK 67, n. 32, 862 P.2d 461.

### I. Procedural History

■ ¶7 On appeal, Plaintiffs challenge the correctness of the district court's January 26,

2010 order granting summary judgment in favor of Defendants. Plaintiffs filed a motion for new trial on January 26, 2010,[4] contesting the court's finding that Plaintiffs lacked standing based on the demand requirement and the business judgment rule. The district court denied this motion on May 27, 2010, as well as the corporation's motion to intervene and substitute ETI as plaintiff. However, neither the January 26, 2010 order, nor the May 27, 2010 order was appealable because Clark had filed counterclaims against Plaintiffs that remained pending.

> [A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the final judgment, decree, or final order adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk.

12 O.S.2011 § 994(A).[5] The district court issued an order on October 13, 2010, awarding Defendants attorney fees. On October 25, 2010, Plaintiffs filed a second motion for new trial, addressing both the correctness of the order granting summary judgment and the order awarding attorney fees. On October 29, 2010, the court issued an order nunc pro tunc, modifying the order on Defendants' applications for attorney fees, finding no just cause to delay appeal of the order granting attorney fees and authorizing appeal of the October 13 order pursuant to 12 O.S.2011 § 994. Subsequently, Clark dismissed the remaining counterclaims and crossclaims on November 9, 2010, rendering the January 26, 2010 and May 27, 2010 orders appealable for the first time. Plaintiffs filed an appeal on November 15, 2010, that was dismissed by the Oklahoma Supreme Court as being pre-

---

4. Plaintiffs filed the motion on January 20, 2010, which is deemed filed immediately after the court's order was filed on January 26, 2010. *See* 12 O.S.2011 § 653(C).

5. Further, because Clark's counterclaims arose from the same transaction as the Plaintiffs' claims, the district court could not have certified its January 26 or May 27 orders for immediate

appeal pursuant to 12 O.S.2011 § 994(A). *See Oklahoma City Urban Renewal Auth. v. City of Oklahoma City*, 2005 OK 2, ¶11, 110 P.3d 550, 557 ("the trial court [cannot] advance an order if the unadjudicated claim(s) arise from the same transaction or occurrence as the adjudicated claim") (alteration in original).

maturely filed because Plaintiffs' second motion for new trial had not been resolved. On January 25, 2011, the district court denied Plaintiffs' October 25, 2010 motion. On February 10, 2011, Plaintiffs filed the petition in error in this appeal, contesting the January 26, 2010 order granting summary judgment, the October 13, 2010 order awarding Defendants attorney fees, and the January 25, 2011 order denying Plaintiffs' motion for new trial. We find that Plaintiffs' appeal of the orders of the district court is timely. 12 O.S.2011 § 990.2(A)(non-prevailing party may appeal the order overruling a post-trial motion filed within ten days of a judgment, decree or final order, the judgment, decree or final order sought to be overturned or both).

## II. Standing

■ ¶ 8 Although we address the correctness of the order granting summary judgment as the basis for the Defendants' award of attorney fees, we find that regardless of whether Plaintiffs had standing to seek a TRO at the time it was entered, they have since lost standing as a result of the corporations filing a subsequent action against Defendants.

¶ 9 The district court granted summary judgment in favor of Bradley as to four of Plaintiffs' claims on May 20, 2009, based on a finding that the claims were subject to arbitration pursuant to a clause in Bradley's employment contract. Therefore, Bradley contends that the dismissal of these claims cannot be appealed. We agree.

¶ 10 Plaintiffs do not contest the district court's decision to refer these claims to arbitration, but nonetheless attempt to appeal their dismissal. Neither party has contested the existence or validity of the arbitration clause contained in Bradley's employment contract. Plaintiffs make no contention that the claims against Bradley were not subject to arbitration, and we will not address any attempt to appeal the dismissal of these

claims.[6] *See* Okla. Sup. Ct. R. 1.11(k); *Messler v. Simmons Gun Specialties, Inc.,* 1984 OK 35, n. 11, 687 P.2d 121 (statements in a brief not supported by argument or authority will be treated as waived).

■ ¶ 11 The remaining claims against Bradley and the claims against Clark were dismissed pursuant to the January 26, 2010 order, based on the court's finding that Plaintiffs lacked standing to bring the lawsuit. While Plaintiffs' first motion for new trial was pending, ETI attempted to intervene as plaintiff in the case. When the district court denied ETI's motion to intervene, the corporation filed a petition in case number CJ–2010–3978, asserting the same claims[7] raised in Plaintiffs' initial petition. As a result of the corporation's actions, Plaintiffs no longer have standing to maintain a derivative suit on behalf of the corporation. "Standing is the right to commence litigation, to take the initial step that frames legal issues for ultimate adjudication by a court or jury." *State ex rel. Bd. of Regents v. McCloskey Bros., Inc.,* 2009 OK 90, ¶ 18, 227 P.3d 133, 144. "A plaintiff may lose standing and a controversy become moot during the course of litigation." *Id.* "When standing is placed in issue in a case, the question to be answered is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue—not whether the issue itself is justiciable." *Id.*

■ ¶ 12 Shareholders have limited standing to bring a suit in equity on behalf of a corporation "when the corporation refuses to maintain or defend an action." *Hargrave v. Canadian Valley Elec. Coop., Inc.,* 1990 OK 43, ¶ 11, 792 P.2d 50, 54. "The remedial rights of minority stockholders with respect to wrongs committed against the corporation . . . are derivative rights and any action taken by the stockholders to redress such wrongs must be for the benefit of the corporation." *Weston v. Acme Tool, Inc.,* 1968 OK

---

6. Plaintiffs also argue that the district court lost jurisdiction over the claims against Bradley that were submitted to arbitration, and therefore it was inappropriate to award Bradley attorney fees. This argument is inconsistent with any attempt by Plaintiffs to appeal the dismissal of these claims, and it is not well taken.

7. This does not include the claims against Bradley covered by the arbitration clause in his employment contract.

7, ¶ 12, 441 P.2d 959, 962; *Beard v. Love*, 2007 OK CIV APP 118, ¶ 19, 173 P.3d 796, 802. "The suit must be upon a cause of action which could be enforced by the corporation if it so desired." *Weston*, 1968 OK 7, ¶ 13, 441 P.2d at 962.

In view of the legal concept of corporate entity under which stockholders as such lose their individualities in the individuality of the corporation as a separate and distinct person, and of the fact that stockholders by investing their money in the corporation recognize it as the person primarily entitled to control and manage its use for the common benefit of all the stockholders, it is a well-established general rule that a stockholder of a corporation has no personal or individual right of action against third persons, including officers and directors of the corporation, for a wrong or injury to the corporation which results in the destruction or depreciation of the value of his stock, since the wrong thus suffered by the stockholder is merely incidental to the wrong suffered by the corporation and affects all stockholders alike.

*Dobry v. Yukon Elec. Co.*, 1955 OK 281, ¶ 8, 290 P.2d 135, 137. Plaintiffs have no individual right of action as shareholders, other than the rights of the corporation. We find that the corporations' assumption of control of this lawsuit rendered Plaintiffs without standing to pursue a derivative action on the corporations' behalf. Plaintiffs therefore cannot seek review of dismissal of these claims, and we are unable to grant Plaintiffs relief in this matter.

¶ 13 However, the fact that Plaintiffs no longer have standing to pursue the substantive claims against Defendants does not resolve this appeal. Plaintiffs also appeal the award of attorney fees, which requires consideration of the merits of the order granting summary judgment.

### III. Attorney Fee Award

#### A. Entitlement to Fees

¶ 14 Title 12 O.S.2011 § 1384.2 provides: "If a temporary restraining order is granted, the party restrained may recover the damages he sustained, including reasonable attorney's fees, if it be finally decided that the restraining order ought not to have been granted." We find no case interpreting this statute. It appears from the record that the district court may have concluded that the statute provides for a mandatory award of attorney fees in the event that a court finds a temporary restraining order "ought not to have been granted." We cannot agree with a reading of the statute that mandates an award of fees any time the court finds a TRO should not have been entered for any reason. Rather, the use of the word "may" in the statute, rather than "shall," permits the court, at its discretion, to award attorney fees *only* after a determination that a temporary restraining order should not have been entered, but does not require that result. "The words of a statute will be given a plain and ordinary meaning, unless it is contrary to the purpose and intent of the statute considered as a whole." *Lumber 2, Inc. v. Illinois Tool Works, Inc.*, 2011 OK 74, ¶ 8, 261 P.3d 1143, 1146. Therefore, we vacate the district court's order granting attorney fees to Clark and Bradley and remand this case for consideration of the factors identified in this Opinion as relevant to the district court's exercise of discretion in determining whether to grant Defendants' motion.

¶ 15 The only basis reflected in this record for the district court's determination that Defendants were entitled to attorney fees was the finding that Plaintiffs lacked standing to bring the derivative suit, and therefore were the wrong parties to seek a TRO against Defendants. This was not a determination on the merits of the suit, or on the substance of the TRO, but rather, was a technical victory for Defendants based on the district court's perception of Plaintiffs' standing at that time. The United States Supreme Court has held that a party may not be entitled to attorney fees pursuant to 42 U.S.C. § 1988, based on status as a prevailing party if the victory is a technical one, or that this factor is at least one that should be considered when determining the reasonableness of such an award. *See Farrar v. Hobby*, 506 U.S. 103, 117, 113 S.Ct. 566, 576, 121 L.Ed.2d 494 ("a technical victory may be so insignificant ... as to be insufficient to support an award of attorney's fees" or may be

"part of the determination of what constitutes a reasonable fee"). Although not controlling authority as to whether to award attorney fees pursuant to section 1384.2, we find this analysis persuasive and an element that is appropriate for consideration on remand.

¶ 16 We further note the difference between a temporary restraining order, which temporarily preserves the status quo, and a preliminary injunction.[8] And, in this case the TRO did not restrain Defendants from any activity otherwise permitted by law (destruction of evidence related to the subject matter of this litigation, and using or disclosing trade secrets), the TRO was only in place for approximately three months before it was dissolved, and no preliminary injunction was issued. Finally, we note that the suit filed by the corporations against Defendants sought essentially the same relief granted to Plaintiffs regarding the use or disclosure of trade secrets. Therefore, Defendants are limited in this appeal to arguing that the TRO should not have been granted to the Plaintiffs, rather than that it should not have been entered at all. The corporations' apparent refusal to take action to protect the trade secrets at the time Plaintiffs obtained the TRO is another factor relevant to the district court's consideration of Defendants' motion on remand.

¶ 17 The Oklahoma Supreme Court, in a case interpreting a statute similar to section 1384.2, held that the purpose of "[i]ncluding attorneys' fees as an element of damages sustained compensates the wrongfully enjoined and deters frivolous and meritless claims to the prejudgment equitable remedy of temporary injunctions." *Bowlin v. Alley*, 1989 OK 66, ¶ 16, 773 P.2d 365, 370. It is not apparent from the record that this purpose is served by an award of attorney fees in this case. As previously discussed, it appears the district court treated the statute as providing for a mandatory award of fees in this case,

and therefore did not consider whether Defendants were entitled to fees based on the specific facts of this case. As a result, we must remand for a determination on the issue of whether Defendants are entitled to attorney fees. "An appellate court will not make first-instance determinations of disputed *law or fact* issues. That is the trial court's function *in every case....*" *Bivins v. State ex rel. Oklahoma Mem'l Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464.

### B. Basis for the Award

¶ 18 It is also clear from the language of section 1384.2 that in order to be entitled to an attorney fee award, the court must determine the TRO should not have been entered. Although we have determined that Plaintiffs no longer have standing, we must examine the district court's finding that Plaintiffs lacked standing at the time this suit was filed, as a basis for the award of fees.

¶ 19 Plaintiffs claim it was error to grant summary judgment based on the finding that Plaintiffs lacked standing to pursue a derivative action. Before bringing a derivative suit, a shareholder must first attempt to obtain redress from the corporation, unless good cause exists for failing to do so. *In re American Int'l Group, Inc.*, 965 A.2d 763, n. 157, 810 (Del.Ch.2009). The district court found that the TRO should not have been entered against Defendants because Plaintiffs lacked standing to pursue the derivative suit based on the demand requirements in such an action. Title 12 O.S.2011 § 2023.1 provides in part:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the petition shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of

---

8. A temporary restraining order, while in effect a species of injunction, is in some respects to be distinguished therefrom. The purpose of such an order is to restrain the defendant for what should be a very brief period, pending a hearing on the application for a temporary injunction, and it goes no further than to preserve the status quo until that determination, the status quo being the last actual, peaceable, noncontested status which preceded the pending controversy.
*Neil v. Pennsylvania Life Ins. Co.*, 1970 OK 172, ¶ 16, 474 P.2d 961, 964–65.

which he complains or that his share or membership thereafter devolved on him by operation of law. The petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

This statute is modeled after a similar Delaware statute. *See* Del. Ch. Ct. R. 23.1. "It is a settled rule that when one state adopts a statute from another, it is presumed to adopt the construction placed upon the statute by the highest court of the other state." *Beard v. Love*, 2007 OK CIV APP 118, ¶ 20, 173 P.3d 796, 802 (citing *Bank of the Lakes, Langley, Oklahoma v. The First State Bank, Ketchum, Oklahoma*, 1985 OK 81, ¶ 9, 708 P.2d 1089, 1091). Further, the parties maintain that Delaware law applies in this case, because both Efftec and ETI are incorporated in Nevada, which Plaintiffs contend applies Delaware law of corporations. *See Shoen v. SAC Holding Corp.*, 122 Nev. 621, 137 P.3d 1171 (2006).[9] The acts that are the subject of this suit occurred in Oklahoma. It is unclear whether the district court conducted a choice of law analysis. Nevertheless, we find no material difference between Oklahoma and Nevada law, both of which look to Delaware law for guidance on this issue.

■■■■■ ¶ 20 "A stockholder … may bring suit only when the corporation refuses to maintain or defend an action." *Hargrave v. Canadian Valley Elec. Coop., Inc.*, 1990 OK 43, ¶ 11, 792 P.2d 50, 54 (citing *Barnett v. Bodley*, 1959 OK 274, ¶ 11, 348 P.2d 502, 505). "Ordinarily before a court will entertain an action brought by shareholders, the shareholders must first show that they sought relief through corporate channels without success." *Id.* (citing *Guaranty*

*Laundry Co. v. Pulliam*, 1948 OK 30, ¶ 24, 191 P.2d 975, 979). The demand requirement exists to protect the decision making authority of the corporate board, and the board's right to manage the affairs of the corporation, which includes the authority to make decisions on whether to initiate litigation. *In re American Int'l Group, Inc.*, 965 A.2d 763, 808 (Del.Ch.2009). *See Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del.1990); *In re Citigroup, Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124 (Del.2009).

■■■■ ¶ 21 The Delaware Supreme Court, considering the purpose of the demand requirement, held that "if the demand rule requires deference to the prerogative of management, its invocation must advance management's position, *vis-a-vis*, the claims in question, otherwise, the rule serves no function." *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 731 (Del.1988).[10] Considering that the purpose of the demand requirement is to ensure that the corporate board's management decisions are respected, we find that a critical inquiry in any shareholder's derivative suit is whether the board, upon receiving a shareholder's demand, conducted an investigation in good faith and made a determination that initiating litigation was not in the corporation's best interest. Defendants failed to demonstrate a lack of dispute as to this material fact, and therefore summary judgment was not appropriate.

¶ 22 The evidence relied on by Defendants in obtaining summary judgment included statements by Plaintiffs and on behalf of the corporations, that a demand had been made to initiate litigation and was refused. Defendants principally relied on a letter from former counsel for the corporations and shareholder David Gordon, stating that Gordon had personally investigated the matter, and

---

9. The question of whether a shareholder has complied with the demand requirement is one of substantive, not procedural law. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991) ("In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'"). The Nevada rule appears to

be similarly modeled after the Delaware rule. *See* Nev. R. Civ. P. 23.1.

10. This case involved a question of whether demand on the corporation was excused, rather than whether a demand had been made. We recognize the difference between the two types of cases, but find the analysis from demand excused cases persuasive as it addresses the purpose of the demand requirement.

advised that the corporation was not financially able to initiate litigation against Defendants at that time. We find this insufficient to demonstrate as a matter of law that the corporate board conducted an investigation,[11] and find the record does not conclusively demonstrate that the corporation objected to Plaintiffs' maintenance of this suit.

¶ 23 We further find it problematic that Defendants in this case are no longer employed by the corporation in any capacity. Although they apparently remain shareholders of ETI, ETI has alleged that they have violated their duties to the corporation. In a case involving attempts by non-corporate defendants to invoke the business judgment rule as a defense to a derivative suit, the Delaware Supreme Court held that "when the challenged transaction does not involve director judgment, [but] rather ... encompasses the actions of a third party in fulfilling its duties to the subject corporation ... we need not consider whether [the corporation's] directors have properly exercised their business judgment." *Id.* It is not apparent from the record that Defendants in this case represent the position of the corporate board.

¶ 24 The majority of cases cited by Defendants involve a corporation seeking dismissal of a shareholder's derivative suit. In such a case, it is true that the board's decision is accorded deference pursuant to the business judgment rule. "Consistent with the purpose of requiring a demand, a board decision to cause a derivative suit to be dismissed as detrimental to the company, after demand has been made and refused, will be respected unless it was wrongful." *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784 (Del.1981).[12] Although a non-corporate defendant has standing to raise the business judgment rule as a defense, the demand requirement does not exist as a shield of immunity for defendants. *Kaplan v. Peat, Marwick, Mitchell & Co.*, 529 A.2d 254, 259 (Del. Ch.1987) (reversed in part on other grounds); *In re American Int'l Group, Inc.*, 965 A.2d at 810–11. And, the justification for allowing a third-party defendant to raise the rule as a defense is to further the purpose of the demand requirement. *Id.* As stated previously, that purpose is to respect the decision-making primacy of the corporate board. From this record, there is at least a question of fact as to whether these corporate boards had made any decision protected by the business judgment rule at the time summary judgment was granted; and, if so, whether the boards approved of or objected to Plaintiffs' suit after consideration of the matter.[13]

¶ 25 In this case, the court appears to have granted Defendants' motion applying the general rules of summary judgment procedure, without considering the differences in a shareholder's derivative action, or the purpose of the demand requirement in a derivative suit. When properly considered in this context, it was error for the court to grant summary judgment based solely on the evidence in the record. The record does not demonstrate that granting summary judgment in favor of Defendants would further the purpose of respecting the board's author-

---

**11.** Defendants provide no authority to support a contention that investigation by one non-officer or director shareholder constitutes a good faith investigation, or that Gordon's conclusions would necessarily represent the views of the corporate board. *See Zapata Corp. v. Maldonado*, 430 A.2d 779, 786 (Del.1981).

**12.** "Whenever any action or inaction by a board of directors is subject to review according to the traditional business judgment rule, the issues before the Court are independence, the reasonableness of its investigation and good faith," and "when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del.1990). "If a 'committee, composed of independent and disinterested directors, conducted a proper review of

the matters before it, considered a variety of factors and reached, in good faith, a business judgment that (the) action was not in the best interest of (the corporation)', the action must be dismissed." *Zapata Corp. v. Maldonado*, 430 A.2d 779, 787 (Del.1981) (quoting *Maldonado v. Flynn*, 485 F.Supp. 274, 286 (S.D.N.Y.1980)).

**13.** The motion to intervene and substitute ETI as plaintiff, filed by the corporation March 5, 2010, states: "From the filing of this action until this date, the Defendant corporations did not take an official position of either support or objection to this action," and that "[p]rior to this Court's ruling on the standing issue, Efficiency Technologies, Inc., was fine with permitting the shareholder Plaintiffs to pursue the derivative action against the Defendants."

ity. This conclusion is further supported by the corporation's attempt to intervene and substitute itself as plaintiff in this litigation when it became apparent that Defendants sought to obtain dismissal of Plaintiffs' suit on standing grounds. *See Zapata Corp.*, 430 A.2d at 783 (Del.1981) ("In sum, despite the board's refusal to bring suit, it is clear that the board supported [the shareholder] in his efforts. It is not surprising then that he was allowed to proceed as the corporation's representative 'for the prevention of injustice,' because 'the corporation itself refused to litigate an apparent corporate right.'") (citing *Sohland v. Baker*, 141 A. 277 (Del.1927) (finding a shareholder had standing to pursue a claim although the board had refused his demand, where it was apparent that the corporation did not object to his maintaining the suit)).

¶ 26 Defendants may contend on remand that their status as shareholders entitles them to raise the business judgment defense on behalf of the corporation.[14] However, because issues of fact remain as to whether the corporation conducted an investigation and the board made a decision concerning the litigation, we cannot affirm the order granting summary judgment.

¶ 27 We find it unnecessary to address Plaintiffs' contentions of error related to denial of the motions for new trial because we reverse the grant of summary judgment. On remand, the court may consider the evidentiary issues Plaintiffs raised in the motions for new trial, including whether a demand was actually communicated to the corporation, if appropriate.

¶ 28 We find it was error to grant summary judgment in favor of Defendants. That judgment is reversed and the two orders denying Plaintiffs' motions for new trial are vacated. However, because we find that Plaintiffs no longer have standing to maintain this suit, we reverse the grant of summary judgment and remand this case for a determination of the standing issue in a limited respect only as it relates to determination of the correctness of Defendants' attorney fee award.

## CONCLUSION

¶ 29 Although Plaintiffs' current lack of standing prevents this Court from granting Plaintiffs relief from the order granting summary judgment, we find an issue of fact remains as to whether Plaintiffs lacked standing to seek the TRO at the time it was entered. We therefore reverse the order of the district court granting summary judgment and vacate the orders denying Plaintiffs' motions for new trial. The order granting attorney fees is vacated, and we remand this case to the district court for a determination consistent with this Opinion of whether Defendants are entitled to fees. If the court determines Defendants are entitled to such an award, the court shall determine what constitutes a reasonable fee, stating the basis for such award and a calculation[15] of the recoverable fees as authorized by section 1384.2.[16]

¶ 30 **REVERSED IN PART, VACATED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, P.J., and WISEMAN, J., concur.

---

14. *But see Spiegel v. Buntrock*, 571 A.2d 767, n. 14 (Del.1990) ("The protections of the business judgment rule can only be invoked by disinterested directors," although "the fact that all directors are named as defendants in a derivative complaint is not determinative of their lack of independence.").

15. See *Spencer v. Oklahoma Gas & Elec. Co.*, 2007 OK 76, ¶ 13, 171 P.3d 890, 895; *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, ¶ 22, 598 P.2d 659, 663; *Atwood v. Atwood*, 2001 OK CIV APP 48, ¶ 64, 25 P.3d 936, 950.

16. On May 14, 2012, Plaintiffs in this case filed an Application to Stay Enforcement of Judgment and Approve Supersedeas Bond. As a result of this Opinion, the district court shall reconsider Plaintiffs' motion on remand.