2014 OK CIV APP 11

**Gregory M. EGLESTON, derivatively on behalf of Chesapeake Energy Corporation, Plaintiff/Appellant,**

v.

**Aubrey K. McCLENDON, Merrill A. Miller, V. Burns Hargis, Louis Allen Simpson, Archie W. Dunham, Bob G. Alexander, Vincent J. Intrieri, R. Brad Martin, Frederic M. Poses, Charles T. Maxwell, Richard K. Davidson, Kathleen M. Eisbrenner, Donald L. Nickles And Frank A. Keating, Defendants/Appellees,**

and

**Chesapeake Energy Corporation, Nominal Defendant/Appellee.**

No. 111,833.

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 19, 2013.

its Chief Executive Officer since its inception. Plaintiff also alleged that McClendon and the remaining Defendants were and/or are members of the Chesapeake Board of Directors at all times relevant to the allegations of Plaintiff's Petition.[1]

¶ 3 Plaintiff alleged that he had reviewed the books and records produced by Chesapeake, filings by the Securities Exchange Commission, and other publicly available documents and reports which revealed, inter alia, a pattern of self-dealing, usurpation of corporate opportunities and conflicts of interest by McClendon and former and/or current members of the Board of Directors, in derogation of corporate rules of governance and their fiduciary duties, to the damage of the company and its shareholders. Plaintiff also alleged that, on or about August 10, 2012, he made a Demand on Chesapeake's Board of Directors to take immediate legal action against McClendon and former members of the Board of Directors to recover damages for breach of fiduciary duty, to enforce the rules of corporate governance, and to remove McClendon as CEO. Plaintiff further alleged the Board of Directors refused his Demand, and "defer[red] further action on the Demand during the pendency of related litigation, Board review, and administrative inquiries and investigations," but "failed to meet the standard of good faith and did not exercise valid judgment in refusing the Demand because" the Board failed to conduct any investigation of the allegations of the Petition and decided to defer action on the Demand after a single meeting, tainted by the presence of former Board members against whom the Petition set forth allegations of wrongdoing.[2]

Mark A. Waller, David Jorgenson, Sneed Lang P.C., Tulsa, Oklahoma, for Appellant

Spencer F. Smith, McAfee & Taft, A Professional Corporation, Oklahoma City, Oklahoma, for Appellee Chesapeake Energy Corporation.

LARRY JOPLIN, Chief Judge.

¶ 1 Plaintiff/Appellant Gregory M. Egleston (Plaintiff), derivatively on behalf of Chesapeake Energy Corporation, seeks review of the trial court's order granting the motion to dismiss of Nominal Defendant/Appellee Chesapeake Energy Corporation (Chesapeake). Plaintiff asserts the trial court erred in dismissing his Verified Shareholder's Derivative and Demand Refused Petition on the finding that Chesapeake's current Board of Directors, Defendants Aubrey K. McClendon, Archie W. Dunham, Frederic M. Poses, Bob G. Alexander, R. Brad Martin, Vincent J. Intrieri, Merrill A. Miller, V. Burns Hargis, and Louis Allen Simpson, exercised reasonable business judgment when it deferred action on Plaintiff's litigation demand.

¶ 2 On November 9, 2012, Plaintiff filed his Verified Shareholder's Derivative and Demand Refused Petition. Plaintiff alleged that Defendant Aubrey K. McClendon is a co-founder of Chesapeake, and has served as

---

1. Plaintiff alleged that Defendants McClendon, Miller, Hargis, Simpson, Maxwell, Keating, Nickles and Eisbrenner were members of the Chesapeake Board of Directors until June 21, 2012. Plaintiff further alleged that Defendants Dunham, Poses, Alexander, Martin, Intrieri, McClendon, Miller, Hargis and Simpson constitute the current Board of Directors, and have been on the Board since June 21, 2012.

2. To his Petition, Plaintiff attached a copy of a letter from Chesapeake's Senior Vice–President, Treasurer and Corporate Secretary, informing him of the Board's action on his Demand:

I am writing to update our previous correspondence regarding your August 10, 2012 demand, on behalf of Mr. Gregory M. Egleston, that Chesapeake's Board of Directors take action regarding (i) Aubrey McClendon's personal loans and compensation packages; (ii) Mr. McClendon's participation in the Founder Well Participation Program (the "FWPP") and his purported conflicts with Company interests; (iii) Mr. McClendon's participation in negotiating asset sales on the behalf of the Company; (iv) the purported breach of lease agreements "leading to $100 million in liability for the Company"; ([v]) Company business and communications with Encana Corp.; and ([vi])

¶ 4 Chesapeake filed a motion to dismiss. Chesapeake alleged that the matters complained-of in Plaintiff's petition were the subject of other shareholder derivative suits, and investigations by the Board of Directors, the Securities Exchange Commission or Department of Justice or the Michigan Attorney General in fourteen different venues or proceedings.[3] Chesapeake further asserted that it complied with Plaintiff's requests for the production of corporate books and records in good faith, and that, in the valid exercise of reasonable business judgment, for the good of the company, its Board elected to defer proceeding on Plaintiff's Demand pending further action in the other litigations and investigations. Chesapeake argued that, by making Demand on its Board, Plaintiff had conceded its independence and disinterest, and had failed to allege specific wrongful acts either demonstrating the lack of any rational business purpose and overcoming the Board's presumed-correct exercise of its business judgment.

¶ 5 Plaintiff responded. Plaintiff asserted the Board's decision to defer action on his Demand, without substantial independent investigation and in the presence of directors against whom he alleged wrongful acts, demonstrated its failure to exercise good faith or valid business judgment. Plaintiff further asserted the decision to defer action on his Demand constituted neither the grant or denial of his Demand, and did not preclude this action. Plaintiff lastly requested leave to amend his petition if the trial court granted the motion to dismiss.

¶ 6 Chesapeake responded, and the trial court ordered further briefing. After hearing the parties' arguments, and considering the briefs and materials submitted, the trial court held:

> ... Chesapeake's Board of Directors exercised reasonable business judgment in deferring any action on Plaintiff's litigation demand. Specifically, the Court finds the Board's concern that if Chesapeake pursues litigation at this time there may be adverse consequences to it due to the ongoing investigation by the SEC, DOJ and the Michigan Attorney General.

> For this reason, Plaintiff's Shareholder's Derivative and Demand Refused Petition is dismissed with prejudice.

Plaintiff appeals, and the matter stands submitted on the trial court record.[4]

¶ 7 Oklahoma statute provides:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the petition shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or compara-

certain related issues (the "Demand"). The Board considered the Demand on September 20, 2012, at the first regularly scheduled meeting after the Demand was received.

As you may be aware, a number of Chesapeake shareholders are pursuing multiple lawsuits related to the allegations and subject matter set forth in the Demand. In addition, the Board is in the midst of the review announced in the Company's April 26, 2012 press release, which includes the allegations and subjects set forth in the Demand. There are also ongoing inquiries and investigations into the allegations and subject matter set forth in the demand by the SEC, the DOJ and other administrative agencies.

In light of these facts, and after being briefed on the status of the litigation and the administrative inquiries and investigations, taking into account the principals set forth in the case of *Furman v. Walton*, 2007 WL 1455904 (N.D.Cal. May 16, 2007), aff'd, 320 Fed.Appx. 638 (9th Cir.2009), and receiving legal advice from counsel, the Board determined that it was in the best interests of the Company and its shareholders to defer further action on the Demand during the pendency of the related litigation, Board review and administrative inquiries and investigations. In the meantime, the Board would be happy to consider any additional information that you may be able to provide.

3. See, footnote 2, supra.

4. Rules 4(m), 13(h), Rules for District Courts, 12 O.S., Ch. 2, App.; Okla.Sup.Ct.R. 1.36, 12 O.S., Ch. 15, App.

ble authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs. 12 O.S.2023.1. So, "[a] stockholder . . . may bring suit only when the corporation refuses to maintain or defend an action." *Hargrave v. Canadian Valley Elec. Coop., Inc.,* 1990 OK 43, ¶ 11, 792 P.2d 50, 54; *Kurtz v. Clark,* 2012 OK CIV APP 103, ¶ 20, 290 P.3d 779, 787. "The demand requirement exists to protect the decision making authority of the corporate board, and the board's right to manage the affairs of the corporation, which includes the authority to make decisions on whether to initiate litigation." *Kurtz,* 2012 OK CIV APP 103, ¶ 20, 290 P.3d at 787. (Citations omitted.)

■ ¶ 8 That is to say, "the purpose of the demand requirement is to ensure that the corporate board's management decisions are respected, [and] a critical inquiry in any shareholder's derivative suit is whether the board, upon receiving a shareholder's demand, conducted an investigation in good faith and made a determination that initiating litigation was not in the corporation's best interest." *Kurtz,* 2012 OK CIV APP 103, ¶ 21, 290 P.3d at 787. (Citations omitted.) "When applying the business judgment rule, courts presume that 'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company and its shareholders.'" *Beard v. Love,* 2007 OK CIV APP 118, ¶ 29, 173 P.3d 796, 804. (Citations omitted.) "Whenever any action or inaction by a board of directors is subject to review according to the traditional business judgment rule, the issues before the Court are independence, the reasonableness of its in-

vestigation and good faith," and "when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Kurtz,* 2012 OK CIV APP 103, ¶ 24, 290 P.3d at 788, fn. 12. (Citations omitted.)

■ ¶ 9 In this respect, Plaintiff alleged that, in refusing his Demand, Chesapeake's Board "failed to meet the standard of good faith and did not exercise valid judgment in refusing the Demand." Particularly, Plaintiff alleged Board determined to refuse his Demand after a single meeting, conducted no adequate independent investigation, nor appointed any special or independent committee to review the allegations of the Demand. Plaintiff further alleged that, in the discussion of the Demand, Board failed to exclude McClendon and former members of the Board against whom the Demand alleged wrongdoing, thereby compromising the ability of the current Board to validly exercise its business judgment, and demonstrating the current Board's "bad faith." Plaintiff lastly alleged the current Board, as the Demand-alleged recipients of excessive compensation, were "interested" and "incapable of considering and reviewing the Demand."

■ ¶ 10 Oklahoma law in this area is not well-developed. This being so, and our law patterned on that of the state of Delaware, we may look to the decisions of the Delaware courts for instruction. *Kurtz,* 2012 OK CIV APP 103, ¶ 19, 290 P.3d at 786–787; *Beard,* 2007 OK CIV APP 118, ¶ 20, 173 P.3d at 802; *Woolf v. Universal Fidelity Life Ins. Co.,* 1992 OK CIV APP 129, ¶ 6, 849 P.2d 1093, 1095.

■ ¶ 11 Regarding the allegation of the Board's insufficient investigation, "[b]y electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond." *Spiegel v. Buntrock,* 571 A.2d 767, 777 (Del.1990). "A board's refusal to accede to a shareholder's demand is subject to judicial review according to the traditional business judgment rule." *Spiegel,* 571 A.2d at 775–76. "[W]hen a board refuses a demand, the only issues to be examined are the good faith and reason-

ableness of its investigation." *Spiegel*, 571 A.2d at 777. "Reasonableness implicates the business judgment rule's requirement of procedural due care; that is, whether the ... Board acted on an informed basis in rejecting [the shareholder's] demand." *Levine v. Smith*, 591 A.2d 194, 212–213 (Del.1991).

¶ 12 However, "there is obviously no prescribed procedure that a board must follow." *Levine*, 591 A.2d 194, 214 (Del.1991). "[A] formal investigation will not always be necessary because the directors may already have sufficient information regarding the subject of the demand to make a decision in response to it." *Rales v. Blasband*, 634 A.2d 927, 935, fn. 11 (Del.1993). *See also, Halpert Enterprises, Inc. v. Harrison*, 2008 WL 4585466 (2d Cir.2008).[5]

¶ 13 In the present case, the Petition and Board's response to Plaintiff's demand demonstrate that Board appreciated the substance of Plaintiff's complaints. The Petition and Board's response also demonstrate that Board was sufficiently informed to conclude the substance of Plaintiff's complaints were the subject of its own investigation, other shareholder derivative suits, and investigations by the Department of Justice, the Securities Exchange Commission, and the Michigan Attorney General. The record does not demonstrate that Board acted otherwise than adequately informed of the substance of Plaintiff's complaints.

¶ 14 Regarding the allegations of Board's lack of independence, a Board member's receipt of compensation does not *ipso facto* establish a conflict of interest. *In re E.F. Hutton Banking Practices Litigation*, 634 F.Supp. 265, 271 (S.D.N.Y.1986). Even where the Board has previously approved its own compensation, later challenged as improper, "[t]he fact that a Corporation's directors have previously approved transactions subsequently challenged in a derivative suit does not inevitably lead to the conclusion that those directors, bound by their fiduciary obligation to the corporation, will refuse to take up the suit," and absent a specific allegation that the approval of their compensation packages "themselves or calculation thereof involved some form of self-dealing," a conflict of interest is not shown. *Id.*

¶ 15 In this respect, however, "the size and structure of executive compensation are inherently matters of judgment," and, unless constituting a waste of corporate assets, i.e., "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade," executive compensation set by a Board's compensation committee, and later approved by the Board, falls within the protection of the business judgment rule. *Brehm v. Eisner*, 746 A.2d 244, 263 (Del.Supr.2000). (Footnotes omitted.) In the present case, the Board members' compensation was set by a Compensation Committee, apparently operating within its delegated authority, and, as a matter of "waste," Board's approval of an executive compensation package "will be upheld unless it cannot be 'attributed to any rational business purpose.'" *In re Walt Disney Co. Derivative Litigation*, 906 A.2d 27, 74 (Del.Supr.2006) (Footnotes omitted.) Plaintiff's Petition does not allege sufficient facts to establish Board's conflict of interest as a result of the member's receipt of compensation.

¶ 16 The Plaintiff's allegations of Board's dominance by McClendon and/or the previous Board members, divesting Board of its presumption of disinterest, are reasonably

---

5. "An investigating board generally is under no obligation to make use of any particular investigative technique. 'While a board of directors has a duty to act on an informed basis in responding to a demand ..., there is obviously no prescribed procedure that a board must follow.' More specifically, '[i]n any investigation, the choice of people to interview or documents to review is one on which reasonable minds may differ.... Inevitably, there will be potential witnesses, documents and other leads that the inves-

tigator will decide not to pursue.' This principle is derived from the underlying norm of the business judgment rule-when making a business decision, such as whether to pursue litigation in response to a shareholder demand, a board must be free to exercise its broad discretion without excessive judicial fetters. As such, there is no rule of general application that a board must interview every possible witness who may shed some light on the conduct forming the basis of the litigation." (Citations omitted.)

specific. On the issue of a director's independence, the decisions are in accord:

> For a director to be "independent," he or she must be both disinterested and free from 'the influence of other interested persons.' *Rales*, 634 A.2d at 936; *see also Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984), overruled on other grounds by *Brehm*, 746 A.2d 244 (stating that an independent director must be able to make a decision "based on the corporate merits of the subject before the board rather than extraneous considerations or influences"). "To establish lack of independence, [plaintiffs] must show that the directors are 'beholden' to the [interested directors] or so under their influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936; *see also In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 938–39 (Del.Ch. 2003) (citations omitted) (noting that a director may be "beholden" due to "personal or other relationships" with an interested party).

*Sachs v. Sprague*, 401 F. SupP.2d 159, 164 (D.Mass.2005).

▇▇▇ ¶ 17 That said, the decisions are also in accord that a board's decision to defer or refuse action on a shareholder's demand due to the pendency of related litigations constitutes a reasonable exercise of business judgment. In *Maccoumber v. Austin*, 2004 WL 1745751, (N.D.Ill.2004), a federal District Court in the Northern District of Illinois held that a board's decision to delay investigation of the shareholder's demands pending the outcome of related litigation in state court was not unreasonable and dismissed the derivative petition as premature. In *Mozes v. Welch*, 638 F.Supp. 215 (D.Conn.1986), the federal District Court in Connecticut held that a board's decision to delay investigation of the shareholder's demands pending the

outcome of related grand jury proceedings was not only reasonable, but required. 638 F.Supp. at 222.[6] And, in *Furman v. Walton*, 320 Fed.Appx. 638 (9th Cir.2009), the Court of Appeals for the Ninth Circuit, relying on *Levine* and *Brehm*, affirmed dismissal of a derivative suit for the same "compelling," "rational business purpose":

> We assess the [F.R.C.P.] Rule 23.1 motion according to the law of Delaware, the state in which Wal–Mart is incorporated. In challenging the Wal–Mart board's refusal of her demand, Furman made only conclusory allegations unsupported by any "allegations of specific fact...." The board presented several "rational business purpose[s]" for refusing to act on Furman's demand. Those stated reasons justify protection from suit under the business judgment rule.
>
> The district court did not err by dismissing Furman's complaint without leave to amend. *The board asserted that bringing suit as per Furman's demand might have constituted a harmful admission in litigation pending against Wal–Mart. Furman cannot refute this compelling business purpose....*

320 Fed.Appx. at 639. (Emphasis added.)

¶ 18 Board's decision to defer action on Plaintiff's derivative petition constituted a denial of Plaintiff's demand. *Furman v. Walton*, 2007 WL 1455904, *2, fn. 1 (N.D.Cal. 2007). Board's decision to defer action on Plaintiff's derivative petition pending the outcome of related investigations by the Department of Justice, the Securities Exchange Commission, the Michigan Attorney General, and other shareholder derivative actions constituted a reasonable exercise of business judgment. The trial court did not err in so holding and dismissing the Plaintiff's petition.

---

**6.** "Plaintiff argues that the grand jury proceedings 'involved an investigation of individuals other than the instant defendants' and that '[t]he testimony and outcome of those proceedings therefore has no bearing on the liability of the defendants.' This argument, however, is made with the clarity one gains with the proverbial twenty/twenty vision garnered from hindsight. Plaintiff's demand letter instructed the Board to take action against, inter alia, 'those persons responsible for making, presenting and supervis-

ing false labor-cost claims to the government.' It is therefore beyond cavil that the Special Litigation Committee should have awaited the final results of the government's investigations before issuing a final report and recommendation to the full Board in order to fully comply with plaintiff's demand. The court would be remiss in its duties if it did not encourage, indeed require, the Special Litigation Committee to conduct the most thorough investigation under the circumstances."

¶ 19 The order of the trial court is AFFIRMED.

BELL, Acting P.J., and MITCHELL, J. (sitting by designation), concur.