Bernard KAPLAN, Martin Fox and Warren Opal, Trustees, on Behalf of the Chase Manhattan Corporation, Derivatively, Plaintiffs Below, Appellants,

v.

PEAT, MARWICK, MITCHELL & CO., Defendant Below, Appellee,

and

The Chase Manhattan Corporation, Nominal Defendant Below, Nominal Appellee.

Supreme Court of Delaware.

Submitted: Nov. 17, 1987.
Decided: April 19, 1988.

Thomas G. Hughes, and Mark D. Sisk, of Hughes and Sisk, Wilmington, and Jerome

M. Congress (argued), and Virginia A. Lo-Preto, of Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, and Carole A. Broderick, of Greenfield & Chimicles, Haverford, Pa., of counsel, for appellants.

Allen M. Terrell, Jr., and Kevin G. Abrams, of Richards, Layton & Finger, P.A., Wilmington, and Victor M. Earle, III (argued), William T. Hegarty, Allen S. Joslyn, and Kirsten Emigholz, of Cahill, Gordon & Reindel, New York City and Leonard P. Novello, General Counsel and Edwin D. Scott, Associate General Counsel, of Peat, Marwick, Mitchell & Co., New York City, of counsel, for appellee Peat, Marwick, Mitchell & Co.

Before CHRISTIE, C.J., MOORE and WALSH, JJ.

WALSH, Justice:

This is an appeal from a decision by the Court of Chancery dismissing a shareholders derivative action brought by plaintiffs, Bernard Kaplan, Martin Fox and Warren Opal (the "Plaintiffs") on behalf of The Chase Manhattan Corporation ("Chase") against Chase's independent auditor Peat, Marwick, Mitchell & Co. ("Peat Marwick"). Plaintiffs allege that as a result of Peat Marwick's negligence and breach of contract, Chase has suffered significant losses in two separate investment transactions. Peat Marwick moved to dismiss the action for failure to satisfy the demand requirements of Chancery Court Rule 23.1 [1] or, in the alternative, for summary judgment on the basis that Chase made a business judgment not to sue Peat Marwick. In response, Plaintiffs assert that Peat Marwick lacks standing to raise demand failure as a defense. Further, Plaintiffs argue that demand is excused because Chase has revised its prior antagonistic position and no longer objects to the continued prosecution of this derivative action. The Court of Chancery granted Peat Marwick's motion to dismiss holding that allowing a third party to raise demand related defenses will further the underlying policy of the demand requirement. *Kaplan v. Peat, Marwick, Mitchell & Co.*, Del.Ch., 529 A.2d 254, 259 (1987). In addition, the Court held that Chase's revised position of neutrality was an insufficient expression of support for the continued prosecution of the derivative litigation and thus did not serve to excuse demand. *Id.* at 262.

This appeal presents two issues of first impression for this Court to address. First, whether a defendant, other than the corporation on whose behalf the derivative action is asserted, has standing to raise demand related defenses under Chancery Court Rule 23.1. Second, whether a neutral position taken by the subject corporation constitutes acquiescence to the derivative action thereby excusing demand. We conclude that the Vice Chancellor properly held that third parties do have standing to assert demand related defenses. However, we disagree with the Chancery Court's holding that demand is not excused by Chase's position of neutrality. Instead, we hold that when a corporation chooses to state its position in regards to the propriety of the derivative litigation it must do so affirmatively. A position of neutrality is viewed as inconsistent with objection to the continued prosecution of the derivative action and thus serves to excuse demand. Accordingly, the decision of the Court of Chancery granting Peat Marwick's motion to dismiss is hereby reversed.

I

When deciding a motion to dismiss for failure to make a demand under Chancery Rule 23.1 the record before the court

1. Chancery Rule 23.1 provides in pertinent part:
   In a derivative action brought by 1 or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains of that his share of membership thereafter developed on him by operation of law. *The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort.*
   Del.Ch.Ct.R. 23.1 (emphasis added).

must be restricted to the allegations of the complaint. *Aronson v. Lewis,* Del.Supr., 473 A.2d 805 (1984); *Pogostin v. Rice,* Del. Supr., 480 A.2d 619 (1984). However, because the parties relied extensively upon matters outside of the complaint, Peat Marwick's motion to dismiss was, in effect, treated by the trial court as a motion for summary judgment and will be so treated in this Court. *See* Del.Ch.Ct.R. 12(b)(6), 56. Indeed, the circumstances of Chase's neutrality position could have been considered by the Court of Chancery only in the context of a motion for summary judgment since these facts did not appear in the complaint. In any event, because the facts in this case are undisputed, the issues before the Court of Chancery, and upon review in this Court, are essentially legal.

### a.

The first transaction complained of occurred during 1981 and 1982 when Chase purchased approximately $212.2 million of energy related loans through Penn Square Bank ("Penn Square") a small shopping center bank in Oklahoma City. On July 5, 1982, Penn Square was closed by federal banking authorities because of deficient management practices including operating with inadequate capital, poor asset quality, ineffective loan administration, weak internal controls, and deficient liquidity. As a result of the Penn Square closing, Chase has been forced to charge off $45 million of the loans acquired through Penn Square and as of June 30, 1982, approximately $75 million of the loans purchased were nonperforming.

Plaintiffs contend that because Peat Marwick was an auditor for both Penn Square and Chase it was in a position to assess the credit risks involved in the loan purchases and to alert Chase to Penn Square's poor financial condition. Peat Marwick's failure to do so, it is alleged, constituted a breach of its duty of care and contractual obligations.

The complaint also alleges that Chase suffered losses of approximately $285 million in a 1982 transaction in which Chase sold high risk governmental securities to Drysdale Securities Corporation ("Drysdale") subject to repurchase agreements. During the period in which the sales took place, Drysdale was actually insolvent although it had issued a financial statement disclosing a total subordinated debt and equity of only $20.8 million. On May 17, 1982, Drysdale collapsed and was subsequently unable to pay Chase $270 million in coupon interest due on government securities transactions. The complaint alleges that Peat Marwick failed to exercise reasonable care as Chase's auditor in failing to inform Chase of Drysdale's suspect financial status.

### b.

Because of the narrow focus of this appeal, it is necessary to examine in detail the background relevant to demand in this derivative action and related litigation concerning the Drysdale and Penn Square transactions. Litigation began in July, 1982, when Warren Opal and Martin Fox as trustees for Warren Opal, a Chase shareholder, demanded that Chase sue its officers and directors for conduct relating to the losses Chase sustained in the Drysdale transaction. In response to Warren Opal's demand, Chase formed a litigation committee consisting of three outside directors who were not in office during the time that Chase dealt with Drysdale.

On July 5, 1982, while Chase was considering the Warren Opal demand, the Comptroller of Currency announced that Penn Square was insolvent. Following that announcement, another Chase shareholder, Barbara Handel, commenced a derivative action in the Court of Chancery against Chase's directors to recover for Chase's Penn Square losses. Chase responded by giving its litigation committee the additional responsibility of determining whether Chase had any actionable claims against its directors or officers in relation to its Penn Square dealings.

On August 20, 1982, another Chase shareholder, Marjorie Janoff, demanded that Chase sue Peat Marwick for the losses incurred by Chase with respect to the bankruptcy of Penn Square. Chase responded by referring this demand to its senior

management committee to make a recommendation to Chase's audit committee. To assist in its consideration of Ms. Janoff's demand, counsel for Chase retained the accounting firm of Deloitte Haskins & Sells to review Peat Marwick's actions in the Penn Square matter.

On February 18, 1983, Chase informed counsel for Ms. Janoff that it had determined that legal action against Peat Marwick was not in the best interest of the corporation or its shareholders. The text of the letter to Ms. Janoff provided in part:

On the basis of information currently available, Chase declines to sue Peat, Marwick, Mitchell & Co. since Chase believes it would not be in the best interest of the Corporation or its shareholders for such a suit to be commenced. However, Chase has instructed its counsel to continue monitoring developments relating to the complex Penn Square situation to ensure that the Chase rights are adequately protected and any claims are vigorously pursued.

In September, 1982, following their demand on Chase, Martin Fox and Warren Opal filed a derivative action against Chase's directors and officers in New York. Subsequently, on March 11, 1983, this derivative action was filed in the Court of Chancery by Bernard Kaplan, naming as defendants Chase's directors, certain of its officers and Peat Marwick. In response to this action filed by Bernard Kaplan, Chase and Peat Marwick joined in a motion to dismiss for failure to make proper demand under Chancery Rule 23.1

Chase's litigation committee ultimately recommended that Chase bring suit against six of its officers to recover its Penn Square losses. Chase filed suit in March, 1984. In 1985, all claims against Chase's officers for the Drysdale and Penn Square losses were consolidated into a single action in Delaware and settled for $32.5 million.

Following the settlement of claims against Chase's officers the complaint in this action was amended to add Messrs. Fox and Opal as plaintiffs and to drop all defendants except Peat Marwick. On Sep-

tember 24, 1986, Peat Marwick revived its earlier motion to dismiss for failure to make demand. Significantly, Chase did not join in this new motion, choosing instead to set forth its position in an affidavit submitted by Kent Stauffer, a Chase vice-president and its director of litigation, stating in relevant part:

Chase neither objects to nor supports this action being brought on Chase's behalf by certain of Chase's shareholders. Chase takes a neutral position on Peat Marwick's motion and leaves it to the decision of the Court.

Finally, with respect to demand in this case, the second amended complaint alleges:

No demand has been made by plaintiff Kaplan upon the Company's directors to institute litigation or otherwise to seek recovery of its damages from Peat because such a demand would have been futile, as evidenced by the futility of those demands that were made.

Further, the complaint alleges that on July 1, 1982, plaintiffs Fox and Opal demanded that Chase sue its officers and employees responsible for the losses arising out of the Drysdale transaction.

## II

The first issue presented on this appeal is whether a defendant, other than the corporation on whose behalf the derivative action is instituted, has standing to raise the defense of plaintiff's failure to comply with the demand requirements of Chancery Rule 23.1. The resolution of this issue requires us to consider the underlying nature and purpose of the demand requirement in derivative litigation.

█ It is a basic principle of the Delaware General Corporation Law that the business and affairs of a corporation shall be managed by the board of directors. *See* 8 *Del.C.* § 141(a). The exercise of this managerial power is tempered by fundamental fiduciary obligations owed by the directors to the corporation and its shareholders. *Aronson v. Lewis*, 473 A.2d at 811; *Pogostin v. Rice*, 480 A.2d at 624; *Loft, Inc. v. Guth*, Del.Ch., 2 A.2d 225

(1938), *aff'd* Del.Supr., 5 A.2d 503 (1939). There is, of course, the potential for conflict between the directors' power to manage the corporation and the shareholders' power to sue derivatively. As expressed by this Court in *Aronson v. Lewis,* 473 A.2d 805, the nature of the derivative action is two-fold.

> First, it is the equivalent of a suit by the shareholders to compel the corporation to sue. Second, *it is a suit by the corporation, asserted by the shareholders on its behalf,* against those liable to it.

*Id.* at 811 (emphasis added).

The United States Supreme Court has noted that the shareholder derivative action "could, if unrestrained, undermine the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 531, 104 S.Ct. 831, 835, 78 L.Ed.2d 645 (1984) (citing *Hawes v. Oakland,* 104 U.S. (14 Otto) 450, 454–457, 26 L.Ed. 827 (1882)). Because the shareholders' ability to institute an action on behalf of the corporation inherently impinges upon the directors' power to manage the affairs of the corporation the law imposes certain prerequisites on a stockholder's right to sue derivatively. *Aronson v. Lewis,* 473 A.2d at 811; *Pogostin v. Rice,* 480 A.2d at 624. Significantly, Chancery Court Rule 23.1 requires that shareholders seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired. The purpose of pre-suit demand is to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation and to control any litigation which does occur. *See Aronson v. Lewis,* 473 A.2d at 811–812; *see, also Zapata Corp. v. Maldonado,* Del.Supr., 430 A.2d 779, 783 (1981). Thus, the very nature of the demand requirement recognizes the "fundamental precept that directors manage the business and affairs of the corporations." *Aronson v. Lewis,* 473 A.2d at 812.

The standing of a third party to assert demand related defenses must be determined, not on the basis of whether such status benefits the interests of the third party, but whether according such status furthers the nature and purpose of the demand requirement in Chancery Court Rule 23.1, i.e., the protection of the directors' power to manage the affairs of the corporation.

The requirement of pre-suit demand assures that the directors, as managers of the corporation, will have the opportunity to address claims asserted on the corporation's behalf. An expansive standing rule furthers this goal by increasing the class of defendants available to raise the demand issue, and as such, assures that the decision as to whether to proceed with the litigation is made by the appropriate party, i.e., the directors.

◼ In addition, pre-suit demand under Chancery Court Rule 23.1, is an objective burden which must be met in order for the shareholder to have capacity to sue on behalf of the corporation. The right to bring a derivative action does not come into existence until the plaintiff shareholder has made a demand on the corporation to institute such an action or until the shareholder has demonstrated that demand would be futile. *Stepak v. Dean,* Del.Ch., 434 A.2d 388, 390 (1981). Allowing a third party to assert demand related defenses simply provides the defendant with the opportunity to challenge the shareholder plaintiff's capacity to act on behalf of the subject corporation and thus serves the underlying purpose of Chancery Rule 23.1. Therefore, we conclude that Peat Marwick has standing to raise as a defense Plaintiffs' failure to make a demand as required by Chancery Court Rule 23.1

### III

◼ Having concluded that Peat Marwick has standing to raise Plaintiffs' lack of demand as a defense we must next decide whether Chase's current position of neutrality excuses Plaintiffs' failure to

make demand.[2] This issue is also controlled by the purpose underlying the demand requirement in derivative litigation.

As discussed earlier, the derivative action is an equitable device which enables a shareholder to assert a claim on behalf of the corporation. The requirement of pre-suit demand in Chancery Court Rule 23.1 recognizes that the decision to pursue claims belonging to the corporation falls within the scope of the directors' power to manage the business and affairs of the corporation. *Aronson v. Lewis,* 473 A.2d at 812; *Pogostin v. Rice,* 480 A.2d at 624. When the defense of failure to make a demand is asserted, the court is required to examine the position or policy espoused by the corporation which it seeks to protect. Therefore, before a court can apply the traditional standards for determining when demand is excused it must first examine whether the corporation on whose behalf the action is brought has taken a position concerning the propriety of the derivative litigation. Stated differently, if the demand rule requires deference to the prerogative of management, its invocation must advance management's position, *vis-a-vis,* the claims in question, otherwise, the rule serves no function.

■ When a corporation takes a position regarding a derivative action asserted on its behalf, it cannot effectively stand neutral. Because of the inherent nature of the derivative action, a corporation's failure to object to a suit brought on its behalf must be viewed as an approval for the shareholders' capacity to sue derivatively. We hold, therefore, that when a corporation chooses to take a position in regards to a derivative action asserted on its behalf, it must affirmatively object to or support the continuation of the litigation.

■ Thus, Chase's current position of neutrality must be viewed as tacit approval for the continuation of the litigation. Since Chase has acquiesced to this derivative action the policy underlying Chancery Court Rule 23.1 of safeguarding the directors' power to manage the affairs of the corporation is not implicated. *See, e.g., Sohland v. Baker,* Del.Supr., 141 A. 277 (1927). As such, under these unique facts, we conclude that Chase's current position of neutrality excuses Plaintiffs' failure to make demand as required by Chancery Court Rule 23.1.

■ Peat Marwick argues that its motion to dismiss should have been granted based on the traditional standards for determining demand futility established in *Aronson v. Lewis,* without considering whether Chase has acquiesced to the litigation. In *Aronson* this Court established a two-pronged test for determining demand futility.

Our view is that in determining demand futility the Court of Chancery in the proper exercise of its discretion must decide whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.

*Aronson v. Lewis,* 473 A.2d at 814.

We conclude that the *Aronson* demand futility standard is inapplicable in this case. The demand futility test established in *Aronson* provides a standard for determining whether the directors who approved the challenged transaction are under an influence which precludes them from being "considered the proper persons to conduct the litigation on behalf of the corporation." *Aronson,* 473 A.2d at 814 (citing *McKee v. Rogers,* Del.Ch., 156 A. 191, 192 (1931); *Fleer v. Frank H. Fleer Corp.,* Del.Ch., 125 A. 411, 415 (1924); *Miller v. Loft, Inc.,* Del.Ch., 153 A. 861, 862 (1931)). We are not faced with a similar concern in this case.

2. A review of the facts indicates that neither Bernard Kaplan nor Warren Opal made a demand upon Chase's board of directors to sue Peat Marwick. In its derivative action against Peat Marwick, Plaintiffs cannot effectively rely on an earlier demand made by another Chase shareholder, Marjorie Janoff, to satisfy Chancery Court Rule 23.1. Their complaint is sustainable only as demand is deemed excused.

The application of the demand futility test articulated in *Aronson* presupposes that the corporation has taken a hostile position regarding the derivative litigation. Significantly, the procedural settings in *Aronson* and its progeny involve motions to dismiss for failure to make demand brought by the corporations on whose behalf the derivative actions were asserted. *Aronson v. Lewis,* 473 A.2d at 808; *see also, Pogostin v. Rice,* 480 A.2d at 622; *Grobow v. Perot,* Del.Ch., 526 A.2d 914, 917 (1987); *Good v. Getty Oil Co.,* Del.Ch., 514 A.2d 1104, 1106 (1986); *Moran v. Household Int., Inc.,* Del.Ch., 490 A.2d 1059, 1069 (1985). In contrast, the motion to dismiss in this case has been brought by a third party while Chase has asserted a position of neutrality concerning both the derivative litigation and Peat Marwick's motion to dismiss. Because the Chase directors have decided not to oppose the prosecution of this derivative action we need not address the question as to whether the directors have the requisite independence to institute suit against Peat Mar-

wick. Further, the challenged transaction does not involve director judgment, rather, it encompasses the actions of a third party in fulfilling its duties to the subject corporation. As such, we need not consider whether Chase's directors have properly exercised their business judgment. Thus, under these facts we conclude that this case falls outside the scope of the demand futility test enumerated in *Aronson.*

\* \* \*

The decision of the Court of Chancery recognizing the standing of a third party to assert demand failure as a defense is AFFIRMED, however, the granting of Peat Marwick's motion to dismiss is REVERSED.