**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: November 2, 2017
Date Decided: November 20, 2017

Ned Weinberger
Thomas Curry
Labaton Sucharow LLP
300 Delaware Avenue
Suite 1340
Wilmington, DE 19801

Rudolf Koch
Kevin M. Gallagher
Sarah A. Clark
Anthony M. Calvano
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Kevin G. Abrams
Michael A. Barlow
April M. Ferraro
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Re: *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, Civil Action No. 2017-0486-SG

Dear Counsel:

Before me are motions to dismiss both a claim for damages and a request to establish a constructive trust, arising from purported breaches of fiduciary duties by a corporate controller and an inside director with respect to a cash-out merger. The Plaintiffs are current stockholders of the to-be-acquired corporation. As the last sentence implies, the merger has yet to close, and the Plaintiffs do not seek an injunction; to the contrary, they are in favor of the merger itself. Their claims arise

from assets transferred to another entity controlled by the controller, which was a condition of his support for the merger. The Defendants argue strenuously that such a scenario does not raise a direct claim. I do not reach that issue here, because I find that the matter is not ripe.

What follows is an adumbration of the facts necessary for my decision here.[1] IDT Corporation ("IDT") is the former parent of Straight Path Communications Inc. ("Straight Path" or the "Company"), a holding company for wireless spectrum licenses (the "Spectrum Assets") and certain related patents (the "IP Assets").[2] IDT spun off Straight Path in July 2013 (the "Spin Off").[3] Straight Path entered into a consent decree (the "Consent Decree") with the Federal Communications Commission ("FCC") in January 2017 due to "pre-Spin Off fraudulent conduct."[4] A Separation and Distribution Agreement between IDT and Straight Path requires IDT to indemnify Straight Path for "any liabilities related to events predating the Spin Off."[5] The Consent Decree required Straight Path to pay a $15 million fine,

---

[1] I draw all reasonable inferences in the Plaintiffs' favor that logically flow from the facts in the Complaint. *White v. Panic*, 783 A.2d 543, 549 (Del. 2001). However, I hold no opinion about "the actual truth of any of the allegations" nor the "likely ultimate outcome on the merits." *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 279 (Del. Ch. 2003). In addition, I refer to certain documents and public filings that are incorporated by reference in the Complaint. *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 797 (Del. Ch. 2016).
[2] Verified Consolidated Amended Class Action and Derivative Complaint (the "Complaint" or "Compl.") ¶ 3.
[3] *Id.*
[4] *Id.* ¶ 4.
[5] *Id.* ¶ 3.

2

relinquish approximately 20% of the Spectrum Assets, and pay approximately 20% of the proceeds from a forced sale of its remaining Spectrum Assets as a fine to the FCC.[6] According to the Plaintiffs, the Consent Decree obligations in light of the Separation and Distribution Agreement gave rise to a right to recover against IDT, and that right of recovery is an asset belonging to Straight Path (the "Indemnification Claim").

Howard Jonas controls both IDT and Straight Path through supervoting stock, and serves as IDT's Chairman.[7] One of his sons serves as CEO of IDT and another son, Defendant Davidi Jonas,[8] is a board member and CEO of Straight Path.[9] Defendant The Patrick Henry Trust (the "Trust") holds Howard's stock in Straight Path with Howard as the beneficiary and holder of certain consent requirements.[10] The Jonas family holds a substantial minority position in IDT, which it controls.[11]

Pursuant to the forced sale provision of the Consent Decree, the Straight Path board of directors (the "Board") initiated an auction process to sell Straight Path by creating a Special Committee of three independent board members (the "Special Committee").[12] Ultimately, the process resulted in an agreement to sell the company

---

[6] *Id.* ¶¶ 4–5.
[7] *Id.* ¶ 3.
[8] Because some of the parties share the same last name, I will sometimes use their first names for purposes of this Letter Opinion. No disrespect or familiarity is intended.
[9] Compl. ¶¶ 3, 8.
[10] *Id.* ¶ 21.
[11] *Id.* ¶ 8.
[12] *Id.* ¶ 6.

3

to Verizon for $3.1 billion, a transaction that all parties here agree is favorable and should be consummated.[13] According to the Complaint, the Special Committee concluded at the beginning of the process that bidders were unlikely to utilize or pay for the Indemnification Claim, and planned to create a litigation trust to preserve the Indemnification Claim for Straight Path's stockholders after the sale.[14] According to the Plaintiffs, Howard learned of the plan to save the Indemnification Claim for the benefit of Straight Path's stockholders through Davidi, who himself learned about it as a member of the Board. Howard then used his status as controller to prevent establishment of the litigation trust. Ultimately, Howard caused the Board to release the Indemnification Claim to IDT for $10 million cash and other consideration, including a 22% interest in the revenue stream of the IP Assets, a transaction described in a term sheet (the "Term Sheet").[15] Because the Indemnification Claim includes 20% of the sale price of Straight Path, the Plaintiffs value the Indemnification Claim at hundreds of millions of dollars or more; they thus contend that transfer of the Indemnification Claim pursuant to the Term Sheet was clearly unfair to Straight Path.[16]

The Board, via the Term Sheet, also sold the Company's IP Assets to IDT for

---

[13] *Id.* ¶ 12.
[14] *Id.* ¶ 7.
[15] *Id.* ¶¶ 11, 36, 88, 100; Calvano Aff. Ex. C at 88 (the "Proxy Statement"); Proxy Statement Ex. B at 2.
[16] Compl. ¶¶ 1, 5, 12, 91–92. The Defendants argue strenuously that defenses to the Indemnification Claim made it of far less value to Straight Path.

4

$6 million.[17]   Those assets generated $18.25 million in licensing revenue between July 2013 and November 2015 alone, and were described in the FCC Consent Decree as worth $50 million.[18]   The Plaintiffs contend that this price was manifestly unfair as well.[19]   IDT immediately re-sold the IP Assets to the Jonas family.[20]

Because of Howard's interests in both Straight Path and IDT, the Plaintiffs allege that Howard sought to save IDT from the potentially crippling liability represented by the Indemnification Claim by causing Straight Path to transfer that claim to IDT at a fraction of its value.[21]   According to the Plaintiffs, the Special Committee acquiesced in this transaction because Howard, through his attorneys, made unspecified "personal threats" of litigation against members of the Special Committee and their counsel.[22]   The Plaintiffs also allege that Howard "withheld his required consent to the [merger]" to coerce the Special Committee to release the Indemnification Claim.[23]

The Plaintiffs allege that Howard breached his fiduciary duties of loyalty and care by using his controller status to cause the Company to sell the Indemnification

---

[17] *Id.* ¶ 11.
[18] *Id.* ¶¶ 54 n.3 ("Because the Company also held other assets, consisting primarily of intellectual property assets, for purposes of the FCC Consent Decree, the Company and the FCC agreed to value all other assets, which primarily consist of the IP Assets, at $50 million."), 90.
[19] *Id.* ¶ 90.
[20] *Id.* ¶ 11.
[21] *Id.* ¶¶ 5, 13.
[22] *Id.* ¶ 93.
[23] *Id.* ¶ 94.

Claim and the IP Assets to IDT for a fraction of their value.[24] By conditioning his consent to the merger on receiving the IP Assets and requiring the release of the Indemnification Claim at an unfair price, Howard secured for IDT, and thus for himself and his family, consideration that should have gone to Straight Path and, following the merger, its stockholders.[25] According to the Complaint, Davidi breached his duty of loyalty to Straight Path by conveying information he learned as a director to his father in a way that facilitated this scheme, which was also aided and abetted by IDT.[26]

Plaintiffs JDS1, LLC and The Arbitrage Fund allege breaches of fiduciary duty by Howard, the Trust, and Davidi.[27] The Plaintiffs also allege that IDT aided and abetted those breaches of fiduciary duty.[28] The Plaintiffs seek damages and request the imposition of a constructive trust to allow them to pursue the Indemnification Claim on behalf of stockholders and for the Company to auction off the IP Assets.[29]

Before me are motions to dismiss from Howard, Davidi, and IDT. I do not reach those motions here. Because the Complaint seeks redress for direct claims of stockholders arising from the merger, and does not seek to enjoin the merger, the

---

[24] *Id.* ¶ 106(a).
[25] *Id.* ¶ 1.
[26] *Id.* ¶ 106.
[27] *Id.* ¶¶ 120–29.
[28] *Id.* ¶¶ 130–33.
[29] *Id.* ¶¶ 134–39.

6

matter is not ripe.

Delaware courts "decline to exercise jurisdiction over a case unless the underlying controversy is ripe" in order to "conserve limited judicial resources and to avoid rendering a legally binding decision that could result in premature and possibly unsound lawmaking."[30] Further, "a dispute will be deemed not ripe where the claim is based on uncertain and contingent events that may not occur, or where future events may obviate the need for judicial intervention."[31] In addition, the "willingness of the parties to litigate" the matter is "immaterial."[32] I have the inherent authority to stay rather than dismiss a matter, where I find that litigants' efficiency so requires.[33]

The claim that a controller transferred to himself assets of the corporation for less than fair value is a claim belonging to the corporation.[34] The Plaintiffs' contention that their cause of action is, in fact, direct relies on the view that the transfer of the corporate assets to IDT was really a part of the merger itself, and was extra consideration for the merger extorted by the controller in return for his consent,

---

[30] *XI Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014) (citation and internal quotation marks omitted).
[31] *Id.* at 1217–18.
[32] *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989).
[33] *See, e.g., Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *14 (Del. Ch. Mar. 31, 2003) ("I proceed to articulate why I believe that I should use my inherent discretion to control my docket and enter a stay.").
[34] *See, e.g.*, *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1218 (Del. 2012).

not shared by the other stockholders.[35]  The Plaintiffs contend that the vast majority of the harm—measured by the payment of 20% of the merger consideration to the FCC—will be sustained only when the merger closes.[36]  The merger closure is contingent on regulatory approval.[37]  If the merger fails to close, any decision on whether a direct claim has been stated on these facts would be advisory. Accordingly, the Plaintiffs' direct claims are unripe.  Because I find it the best use of judicial resources in light of the pending merger, a stay of the direct claims is appropriate here.

While the Plaintiffs assert their claims directly, they make an effort to pursue them derivatively as well.[38]  Here, the Plaintiffs declined to make a pre-suit demand on the Straight Path Board to pursue this claim.   Under Delaware law, "directors, rather than shareholders, manage the business and affairs of the corporation."[39]  For a stockholder to obtain the authority to sue on behalf of the corporation, she must allege either that (1) she has made a demand on the company or (2) her demand would be futile.[40]  Demand futility may be established by pleading facts that raise a reasonable doubt that the directors could bring their business judgment to bear on

---

[35] Compl. ¶ 80.
[36] Draft Tr. of Oral Arg. on Nov. 2, 2017, 68:3–70:4.
[37] *Id*. at 68:12–14.
[38] Compl. ¶¶ 112–13.
[39] *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984).
[40] *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988).

behalf of the corporation when considering a demand.[41]  However, "demand [is not] excused simply because the proper standard of review is entire fairness solely due to an interested transaction with a conflicted controller."[42]

Sale of corporate assets to a controller for an unfair price states perhaps the quintessential derivative claim, where a plaintiff adequately pleads demand excusal under Rule 23.1.[43]  Such a claim typically survives a motion to dismiss and results in entire fairness review.[44]  Presumably because they see theirs as a direct claim for post-sale consideration converted to the controller, the Plaintiffs have not attempted to plead that a majority of the Board is unable to consider a demand here.

The Plaintiffs do assert, however, that "[d]emand is excused because a majority of Straight Path's directors have indicated that they believe this litigation should go forward," as demonstrated when the three independent directors on the four-member board declined to "authorize the company to bring a motion to dismiss the current pleading."[45]  The Plaintiffs quote our Supreme Court's opinion in *Kaplan v. Peat, Marwick, Mitchell & Co.* to say that "where the nominal defendant does not '*affirmatively object to* or support the continuation of the litigation . . . the policy underlying Chancery Court Rule 23.1 of safeguarding the directors' power to

---

[41] *See, e.g., Aronson*, 473 A.2d at 816.

[42] *Lenois v. Lawal*, 2017 WL 5289611 at *13 n.103 (Del. Ch. Nov. 7, 2017).

[43] *See, e.g.*, *Theriault*, 51 A.3d at 1218.

[44] *Id*. at 1239 ("When a transaction involving self-dealing by a controlling shareholder is challenged, the applicable standard of judicial review is entire fairness . . . .").

[45] Compl. ¶ 42.

manage the affairs of the corporation is not implicated,' and demand is excused."[46] However, unlike here, demand was excused in *Kaplan* when a corporation claimed neutrality in a derivative suit by a stockholder against a *third party*, rather than against the board itself.[47]

The Defendants point out that the independent directors were originally party defendants in this matter. The Plaintiffs then dismissed them without prejudice; they are subject to be sued again.[48] According to the Defendants, this sword of Damocles hanging from the thread of the Plaintiffs' discretion means that the independent directors are conflicted here, and their failure to authorize Straight Path to file a motion to dismiss, under these circumstances, cannot serve to excuse demand. Accordingly, say the Defendants, to the extent the Plaintiffs' claims are derivative, they must be dismissed.

I decline to address this issue at this juncture. Again, I note that no party seeks to enjoin the merger. If, as the parties agree is likely, that merger goes through in short order, my stay will be lifted, the direct claims, if viable, will be ripe, and any derivative claims will fall away. If the merger fails, all that will remain is the cause

---

[46] Pls.' Br. in Opposition to the IDT Defs.' Mot. to Dismiss the Am. Compl. 50 (citing *Kaplan*, 540 A.2d at 731).

[47] *Kaplan*, 540 A.2d at 732 ("[T]he challenged transaction does not involve director judgment, rather, it encompasses the actions of a third party in fulfilling its duties to the subject corporation. As such, we need not consider whether [the corporation's] directors have properly exercised their business judgment.").

[48] Order of Dismissal of Certain Defs. without Prejudice (July 26, 2017).

of action belonging to the Company arising from the Term Sheet transaction, and it will then be necessary to assess whether the Plaintiffs may proceed derivatively based on their pleadings. This matter in one guise or another will receive judicial review. But to my mind, addressing the issue of demand excusal at this point adds nothing by way of efficiency, and runs the same risk of an advisory opinion as does addressing the viability of the direct claims.

For the foregoing reasons, this matter is stayed subject to motion by any party to show that the facts are fully developed and the matter is ripe for a decision. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III