**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ROBERT A. FEUER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **C.A. No. 2019-0324-JRS** |
| | ) | |
| MARK ZUCKERBERG, SHERYL K. | ) | |
| SANDBERG; PETER A. THIEL; | ) | |
| REED HASTINGS; SUSAN D. | ) | |
| DESMOND-HELLMAN; MARC L. | ) | |
| ANDREESSEN; JAN KOUM; and | ) | |
| ERSKINE B. BOWLES, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FACEBOOK, INC., | ) | |
| | ) | |
| Nominal Defendant. | ) | |
| _____ | ) | |
| IN RE FACEBOOK, INC. | ) | **Consolidated** |
| DERIVATIVE LITIGATION | ) | **C.A. No. 2018-0307-JRS** |

## ORDER REFUSING APPLICATION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

WHEREAS, on October 5, 2021, the Court issued a Memorandum Opinion

(the "Memorandum Opinion"), in which the Court denied a motion to consolidate

Robert A. Feuer's "demand-made" derivative action with related consolidated

1

"demand-futility" actions, and stayed Feuer's action pending resolution of anticipated motion(s) to dismiss the operative demand-futility complaint[1];

WHEREAS, on October 11, 2021, Feuer moved for reargument or reconsideration of the Court's Memorandum Opinion (the "Reargument Motion")[2];

WHEREAS, on November 8, 2021, the Court issued a Letter Opinion (the "Letter Opinion") (together with the Memorandum Opinion, the "Opinions"), in which the Court denied the Reargument Motion[3];

WHEREAS, on November 11, 2021, Feuer filed an Application for Certification of Interlocutory Appeal (the "Application"), seeking review of the decision to stay his case[4];

WHEREAS, the Application asserts three grounds for interlocutory appellate review under Rule 42 of the Rules of the Supreme Court of the State of Delaware ("Rule 42"): (1) "[t]he interlocutory order involves a question of law resolved for the first time in this State," (2) "[t]he decisions of the trial courts are conflicting upon

---

[1] *Feuer v. Zuckerberg*, 2021 WL 4552160 (Del. Ch. Oct. 5, 2021) ("Memorandum Op.") (D.I. 94) (C.A. 2019-0324). Unless otherwise noted, all Docket Item numbers in this Order refer to Civil Action Number 2019-0324-JRS.

[2] Pl. Robert A. Feuer's Mot. for Reargument or Reconsideration (D.I. 96).

[3] *Feuer v. Zuckerberg*, 2021 WL 5174098 (Del. Ch. Nov. 8, 2021) ("Letter Op.") (D.I. 101).

[4] Robert A. Feuer's Appl. for Certification of Interlocutory Appeal ("Appl.") (D.I. 102).

2

the question of law," and (3) "[r]eview of the interlocutory order may serve considerations of justice"[5];

WHEREAS, on November 22, 2021, the CalSTRS Plaintiffs[6] opposed the Application[7]; and

WHEREAS, having considered the Application, the CalSTRS Plaintiffs' opposition and the criteria set forth in Rule 42;

This 29th day of November, 2021, it appears to the Court that:

1.      Rule 42(b)(i) provides that "[n]o interlocutory appeal will be certified by the trial court or accepted by [the Supreme] Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[8] Instances where the trial court certifies an interlocutory appeal "should be exceptional, not routine, because [interlocutory appeals] disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[9] For this reason, "parties should only ask for the right

---

[5] Supr. Ct. R. 42(b)(iii)(A)–(B), (H); Appl. at 11, 14.

[6] The CalSTRS Plaintiffs are defined in the Memorandum Opinion. *See* Memorandum Op. n.7.

[7] Response of CalSTRS Pls. to Feuer's Appl. for Certification of Interlocutory Appeal ("CalSTRS Response") (D.I. 103).

[8] Supr. Ct. R. 42(b)(i).

[9] Supr. Ct. R. 42(b)(ii).

to seek interlocutory review if they believe in good faith that there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[10]

2.      When determining whether to certify an interlocutory appeal, the trial court should consider the eight factors stated in Rule 42(b)(iii) and "identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.  If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[11]

3.      After balancing the eight factors stated in Rule 42(b)(iii) and weighing the probable costs of interlocutory review, I am satisfied that interlocutory review should be denied for the reasons stated below.

4.      *First*, Feuer continues to mischaracterize the state of our law with respect to pleading demand futility.  He argued in his motion to stay, and again in his Reargument Motion, and now argues in the Application, that "the general presumption that making a pre-suit demand necessarily presents a more difficult road than alleging demand futility, even if correct in some circumstances, no longer applies as a general principle" in the wake of our Supreme Court's recent decision in *United Food and Com. Workers Union & Participating Food Indus. v.*

---

[10] *Id.*

[11] Supr. Ct. R. 42(b)(iii).

4

*Zuckerberg*.[12]  As noted, Feuer advanced this same argument several times before the Court,[13] and the Court soundly rejected it as inconsistent with the Supreme Court's own characterization of its holding.[14]  Nothing in the Application can or does change the clear statement of purpose as expressed by the Supreme Court such that "the interests of justice" would be served by putting the Court and the parties to the substantial cost and delay of interlocutory appellate review.

5.        *Second*, the Opinions do not address a question of law resolved for the first time in this State.[15]  Indeed, the Memorandum Opinion begins by stating "[t]his opinion addresses *an uncommon but not unheard of question of case management.*"[16] The Memorandum Opinion goes on to note that "just last year, then-Chancellor Bouchard confronted a nearly identical circumstance in the *Boeing* derivative

---

[12] *United Food and Com. Workers Union & Participating Food Indus. v. Zuckerberg*, — A.3d —, 2021 WL 4344361 (Del. 2021); Appl. at 3 (emphasis omitted).  Because Zuckerberg is a named defendant in this action, to avoid confusion, the parties have referred to the Supreme Court's opinion in *United Food v. Zuckerberg*, for shorthand, as "*United Food.*"  I adopt the same shorthand here.

[13] Letter Op. at *1; *id.* at *1 n.6.

[14] *Id.*; *id.* at *2 n.10 (citing *United Food*, 2021 WL 4344361, at *16 (explaining that the "refined test does not change the result of the demand-futility analysis")).

[15] Supr. Ct. R. 42(b)(iii)(A); Appl. at 11.

[16] Memorandum Op. at *1 (emphasis added); *id.* ("As noted, this case management quandary is hardly work-a-day . . .  With that said, the simultaneous prosecution of demand-futility and demand-refused complaints is not unheard of in this court.").

5

litigation."[17]  In *Boeing*, "[a]fter carefully considering the matter, "[then-Chancellor Bouchard] elected not to consolidate the demand-futility and demand-refused cases,"[18] as I did,[19] which Feuer supported.[20]  The Chancellor then "stay[ed] the demand-refused case in favor of the demand-futility cases,"[21] as I did,[22] and as was comfortably within the Court's discretion.[23]  There was nothing novel about these case management decisions.

6.      *Third*, the decisions from this Court are not "conflicting upon the question of law."[24]  Feuer points to *In re Freeport-McMoRan Copper & Gold Inc.*

---

[17] *Id.*

[18] *Id.*; *Isman v. Broadway* ("*Boeing*"), C.A. No. 2019-0794-AGB (Del. Ch. Aug. 3, 2020) (ORDER) (Trans. ID 65689651) (D.I. 100).

[19] Memorandum Op. at *4 ("Because the legal standards for demand-futility and demand-refused cases are so different, consolidation of the cases, particularly in advance of pleading stage dispositive motion practice, is unwarranted.").

[20] Robert A. Feuer's Opp'n to the Facebook Defs.' Mot. to Consolidate (D.I. 81) ¶¶ 5–11.

[21] Memorandum Op. at *1.

[22] *Id.* at *5–6.

[23] *Id.* at *4 (quoting from *Boeing* that "[the demand-made plaintiff's] motion fails to provide any good reason why lifting the stay of his action now . . . would advance the best interests of Boeing and its stockholders . . . Accordingly, [his] motion to lift the stay of his action is denied"); *id.* at *5 ("Like the demand-refused plaintiff in *Boeing*, Feuer has not demonstrated why lifting the stay would advance the best interests of Facebook and its stockholders.  Nor has he shown how the stay would prejudice him, his case or, most importantly, the Company he seeks to represent.  On these grounds alone, the Court would be well-within its discretion to deny the motion to consolidate and stay Feuer's action.").

[24] Supr. Ct. R. 42(b)(iii)(B); Appl. at 11.

*Derivative Litigation*[25] and *Mogell v. Oberhelman*[26] as conflicting authority,[27] but these decisions do not conflict with *Boeing* or the Opinions in this case. As the CalSTRS Plaintiffs' Response correctly observes, the *Mogell* court was presented with a stipulated agreement to coordinate the demand-made and demand-futility cases.[28] Indeed, then-Chancellor Bouchard presided over both *Boeing* and *Mogell*, and yet he makes no mention of the purported conflict in his later-decided *Boeing* decision. As for *Freeport-McMoRan*, the court had already entertained argument on motions to dismiss the demand-futility complaint before deciding whether to consolidate the demand-made actions.[29] And, importantly, the defendants in *Freeport-McMoRan* represented to the court that, if the demand-made and demand-futility cases proceeded together, the defendants would *not* argue that the fact certain stockholders had determined the board could competently consider a demand (in the demand-made cases) should be imputed to the stockholder plaintiffs who had made

---

[25] *Freeport-McMoRan Copper & Gold Inc. Deriv. Litig.*, C.A. No. 8145-VCN (Del. Ch. Mar. 12, 2014) (TRANSCRIPT). This case was brought to the Court's attention before the Memorandum Opinion in CalSTRS Pls.' Opp'n to the Facebook Defs.' Mot. to Consolidate the Feuer Action (D.I. 82).

[26] *Mogell v. Oberhelman*, 2018 WL 3877184 (Del. Ch. Aug. 14, 2018).

[27] Appl. at 12.

[28] *Mogell*, 2018 WL 3877184; CalSTRS Response at 9–10.

[29] *Freeport-McMoRan Cooper & Gold Inc. Deriv. Litig.*, C.A. No. 8145-VCN, at 4:10–13 (Del. Ch. Mar. 12, 2014) (TRANSCRIPT).

7

the opposite assessment by pleading demand futility.[30]  Only in *Boeing* was the court required to resolve the parties' dispute regarding whether to consolidate the demand-futility and demand-made actions, or stay the demand-make action, as threshold matters.  The court's discretionary decision to stay the demand-made cases in *Boeing*, and my decision to follow that approach—while declining to adopt "[r]igid rules in case management"[31]—reveals no conflict in the decisions of this court.  Indeed, except in rare cases, it is hard to see how decisions of case management, which will necessarily vary across cases, could be doctrinally conflicting.  As recognized by the court in *Freeport-McMoRan*, "[t]here's no question that the Court has the power to manage its own docket."[32]

7.  *Fourth,* I reject Feuer's argument that "the Opinion and Order are in tension with established Delaware law stressing the importance of the directors' control of corporate governance and decision-making, including with respect to whether or not to pursue claims that belong to the corporation."[33]  Contrary to

---

[30] *Id.* at 170:14–16 ("[Defendants] agree that consolidation will not result in imputation of [the demand-made plaintiff's] demand to the consolidated plaintiffs.").

[31] Memorandum Op. at *5.

[32] *Freeport-McMoRan Copper & Gold Inc. Deriv. Litig.*, C.A. No. 8145-VCN, at 171:14–15 (Del. Ch. Mar. 12, 2014) (TRANSCRIPT).

[33] Appl. at 12–13.

Feuer's characterization of the Opinions, I declined to recognize a blanket rule regarding case sequencing for this very reason, and explicitly acknowledged that:

> if the unspoken 'rule' is that demand-futility plaintiffs always go before demand-refused plaintiffs, there is a risk that stockholders will be less inclined to exercise their right to make a demand on the board to pursue claims, even in cases where a demand may be justified. That, of course, would blunt the optionality of Rule 23.1. *And it would dilute the deference our law gives to boards in their management of the litigation asset.*[34]

As the Memorandum Opinion made clear, if Feuer had advanced a compelling case that his strategy of making a demand on the board was the superior strategy, or if he had proffered a superior pleading, the Court may well have determined to sequence the litigation differently.[35] In this case, however, the Court determined that proceeding first with the demand-futility case, as a matter of case management, was most conducive to efficient litigation and in the best interest of Facebook and its stockholders.[36]

---

[34] Memorandum Op. at *5 (emphasis added).

[35] *See id.* at *5–6.

[36] *Id.* at *6. Indeed, the approach to case sequencing adopted by the Court here simply reflects common sense. *See Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 397 (Del. Ch. 2009) ("This Court possesses the inherent power to manage its own docket, including the power to stay litigation on the basis of comity, efficiency, or simple common sense."). As explained in the Opinions, when a stockholder delivers a litigation demand to the board, she attaches an implicit acknowledgement that the board is disinterested and independent. *City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*, 2019 WL 549938, at *5 (Del. Ch. Feb. 12, 2019) ("By making a pre-suit demand, a stockholder 'tacitly concedes' the disinterest and independence of the board to respond."). The demand-futility complaint challenges those propositions, both as a matter of demand futility and as a matter of the

8.     *Fifth*, Feuer argues that the Opinions, together, will encourage a board to "ignore a shareholder demand entirely, conduct no investigation and take no position in response to a demand, and instead confront only the issue of demand futility."[37]  I disagree for several reasons.  As stated above, the Memorandum Opinion explicitly refused to adopt a blanket rule favoring demand-futility claims over demand-made claims with respect to case sequencing.  Indeed, the Memorandum Opinion contemplated and even identified instances where demand-made cases would naturally proceed in litigation ahead of demand futility

---

alleged breach of fiduciary duty that is the gravamen of the pleading.  When such allegations appear (with some detail) in a demand-futility complaint, it is difficult to endorse an outcome where the Court allows the demand-made complaint, with its implicit acknowledgement of director disinterest and independence, to proceed ahead of, or alongside, the demand-futility complaint, since there remains a realistic chance the Court will soon determine the demand-made plaintiff's implicit acknowledgement was misplaced all along.  In that scenario, if the Court elects not to temporarily stay the demand-made complaint, and then later determines that the demand-futility complaint well pleads demand futility, the Court and the parties would have wasted significant time and resources litigating demand-made claims only to discover that, in the Court's eyes at least, the board was not competent to consider the demand in the first place.  That is not efficient case management.  With that said, the Memorandum Opinion explained that while these common-sense principles will often apply, they will not always apply.  Accordingly, there is no need for, and no basis for, a general rule when it comes to case sequencing.  Memorandum Op. at *5–6. These are determinations driven by the facts and circumstances of each case and fall well within the well-settled discretion afforded the trial court to manage its docket. *See Anderson v. AIG Auto Ins. Co.*, 933 A.2d 1249, 2007 WL 2410898, at *2 (Del. 2007) (TABLE) (acknowledging the inherent power of the trial court "to manage its own docket").

[37] Appl. at 11.

allegations.[38] Even when a court, in its discretion, allows a demand-futility action to proceed first, a board will still have to defend against the demand-made action should the demand-futility claims fail (as is not uncommon).[39] To be clear, the Court *stayed* Feuer's case; it did not *dismiss* it.

9. Feuer takes issue with the Court's decision to allow the demand-futility case to proceed ahead of his because, he contends, "the specific facts relating to the alleged wrongful refusal [in this case] are strong."[40] This argument reveals a central reason why interlocutory appellate review is not justified here. The essence of Feuer's Application is his disagreement with the Court's case-specific assessment of his complaint and the manner in which that assessment supposedly informed the Court's resolution of the case management issue presented in the motion to stay. Feuer's focus on the Court's "erroneous" assessment of his specific complaint exposes the real reason he seeks appellate review—not to challenge a first-time or conflicting pronouncement of law, but to challenge the Court's decision, in this case, to stay his complaint in favor of another. And even that challenge is misplaced.

---

[38] Memorandum Op. at *6.

[39] *Id.* at *6 (noting that "if . . . the demand futility allegations are found wanting, by necessity, that will leave the demand-refused complaint as the only pleading left standing").

[40] Appl. at 7.

11

10. Contrary to Feuer's presupposition, the Court made no assessment of the merits or substantive implications of the allegations in his complaint, beyond observing that he made a litigation demand on the board, because to do so in the context of the case management motions *sub judice* would have been wholly inappropriate. According to Feuer, the Court failed to address the fact that, by ignoring his demand, the Facebook board lost its right to rely upon the business judgment rule in defending its decision not to pursue Feuer's claims.[41] Whether the Facebook board lost that right may or may not be true; the Court did not reach that issue because it did not have to. Having determined, with Feuer's blessing, that the demand-made and demand-futility actions should not be consolidated, the Court then determined that it was most efficient, and in the best interests of Facebook and its stockholders, to address the complaint that would be measured within the demand-futility paradigm first, and then to determine how best to proceed with Feuer's demand-made complaint.[42] All arguments Feuer might have made with respect to his complaint before the Court's decision on the motion to stay remain fully intact.

---

[41] *Id.* at 2–4.

[42] Memorandum Op. at *6 ("Here, the Court is satisfied that the demand-futility plaintiffs have made a bona fide attempt to plead demand futility on several potentially viable grounds. For reasons just explained, it is in the Company's best interest for those allegations to be vetted through pleading stage motion practice before determining whether Feuer's demand-refusal claims should proceed.").

11. Feuer targets a footnote in the Letter Opinion, in which the Court stated that regardless of "[w]hether the demand was refused or ignored, Feuer must [still] make 'particularized allegations which would raise a reasonable doubt that the Board's decision to reject the demand was the product of a valid business judgment.'"[43] That observation, of course, is nothing more than an accurate reflection of our settled law.[44] The Court then observed, contrary to Feuer's characterization of our law, that the board's decision not to respond to a demand does not, in all instances, forsake the business judgment rule.[45] That observation,

---

[43] Letter Op. at *3 n.22 (citing *Grimes v. Donald*, 673 A.2d 1207, 1220 (Del. 1996), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).

[44] *Id.*

[45] *Id.* ("Thus, although the fact that the Board failed to respond to a demand might be relevant in an argument that the Board's decision was not the product of a valid business judgment, contrary to Feuer's argument, it is not our law that ignoring a demand is a *per se* wrongful refusal."); *see also* 3 Robert S. Saunders et al., *Folk on the Delaware General Corporation Law*, § 327.04[C][1], 13-203 (7th ed. 2021) ("Where the board fails to accede to the plaintiff's demand to take corrective action *or does not respond to such demand*, Rule 23.1 requires the plaintiff to plead with particularity why that failure to accede or respond is wrongful.") (emphasis added); *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1240 (Del. Ch. 1987) ("[A] board has no obligation to take any specific type of action to comply with a demand under Rule 23.1. The board may, for example, ignore the demand, or it may take other action it deems appropriate if, in the exercise of its good faith judgment, the circumstances indicate that the corporation's interests would be served thereby."). Feuer points to *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726 (Del. 1988), to rebut this point. But, in *Kaplan*, "Plaintiffs argue[d] that demand [was] excused because [the company] ha[d] revisited its prior antagonistic position and no longer object[ed] to the continued prosecution of this derivative action." *Id.* at 727. The issue was "whether a neutral position taken by the subject corporation constitutes acquiescence to the derivative action thereby excusing demand." *Id.* Thus, *Kaplan* does not support Feuer's argument that because the Facebook board allegedly did not respond to his demand, that silence is *per se* a wrongful refusal under Delaware law. Feuer also

13

while accurate, ultimately played no role in the Court's case management decision.[46]

Thus, for all these reasons, I cannot agree that the Court has endorsed the view that "shareholder demands can be ignored with impunity in favor of parallel demand-futile allegations,"[47] such that interlocutory appellate review is warranted.

12.     *Finally*, to reiterate the prevailing point here, the Court's decision to stay the Feuer action was a matter of discretionary case management. "The discretion to issue a stay is inherent in every court and flows from its control over the disposition of causes on its docket."[48]  As the Court held, Feuer did not demonstrate "why lifting the stay would advance the best interests of Facebook and its stockholders."[49]  Nor did he show "how the stay would prejudice him, his case or, most importantly, the Company he seeks to represent.  *On these grounds alone, the Court would be well-within its discretion to deny the motion to consolidate and*

---

cites *Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del. 1990), which holds that "[a] shareholder who makes a demand can no longer argue that demand is excused," which is inapplicable here.  I note that, in their response to the Application, the CalSTRS Plaintiffs have persuasively distinguished the other authorities relied upon by Feuer.  CalSTRS Response at 7 n.8.

[46] Hence, the Court was "not persuaded that the particular circumstances of Facebook's alleged rejection of Feuer's demand by silence change any of the foregoing analysis." Letter Op. at * 3.

[47] Appl. at 7.

[48] *In re TGM Enters., L.L.C.*, 2008 WL 4261035, at *1 (Del. Ch. Sept. 12, 2008) (internal quotation marks omitted).

[49] Memorandum Op. at *5; Letter Op. at *3.

14

*stay Feuer's action.*"[50]   Although the Court gave a principled explanation of the

reasoning behind its decision to follow *Boeing*, the issue addressed in the

Memorandum Opinion ultimately was "a matter of case management."[51]

13.   The decision to certify an interlocutory appeal generally ought to reflect

exceptional circumstances, and this is especially so for interlocutory appeals of

discretionary decisions.[52]   Based on the foregoing, I cannot certify that the Opinions

are proper subjects of interlocutory appellate review.   Specifically, I cannot certify

---

[50] Memorandum Op. at *5 (emphasis added); Letter Op. at *3 ("Feuer also contends that the Court erred when it determined no prejudice would result from a stay of his case. But Feuer did not (and does not) articulate why the stay would prejudice him or Facebook, the company he seeks to represent. A general statement that unidentified witnesses may leave, die or have their memories fade while the other case proceeds—made for the first time in the [Reargument] Motion—does not suffice.").

[51] Letter Op. at *3.

[52] *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Axiall Corp.*, 219 A.3d 523, 2019 WL 4795508, at *2 (Del. Oct. 1, 2019) (TABLE) (refusing interlocutory appeal of granted motion to stay on the ground of *forum non conveniens* because the ruling was "not exceptional" and "the potential benefits of interlocutory review do not outweigh the inefficiency, disruption, and probable costs caused by an interlocutory appeal"); *iPCS, Inc. v. Sprint Nextel Corp.*, 956 A.2d 31, 2008 WL 2942136, at *2 (Del. Aug. 1, 2008) (TABLE) (refusing to accept interlocutory appeal of a "discretionary" order staying litigation); *Derdiger v. Tallman*, 765 A.2d 950, 2000 WL 1589929, at *1 (Del. Aug. 29, 2000) (TABLE) (same); *Apple Computer, Inc. v. Exponential Tech., Inc.*, 1999 WL 39547, at *14 (Del. Ch. Jan. 21, 1999) ("Where granted, a motion to stay is not a final decision on the merits, but an interlocutory order. Thus, appellate review of the trial court's decision is limited."); *cf.*, *Zimmerman v. State*, 628 A.2d 62, 65 (Del. 1993) ("Under an abuse of discretion standard, this Court will disturb a discretionary ruling of the trial court only when the ruling is based on unreasonable or capricious grounds.").

that the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory appellate review is in the interests of justice. Feuer's application for certification of interlocutory appeal, therefore, must be **REFUSED**.[53]

    **IT IS SO ORDERED.**


                                      */s/ Joseph R. Slights III*
                                            Vice Chancellor

---

[53] *See* Supr. Ct. R. 42(d)(iv)(D) (directing that the notice of appeal to the Supreme Court attach "[t]he order, if any, of the trial court certifying or *refusing* to certify the interlocutory appeal") (emphasis supplied).