OSCN Found Document:Haddan et al. vs The Coves Master Association, Inc. et al.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 Haddan et al. vs The Coves Master Association, Inc. et al.
2025 OK CIV APP 12
Case Number: 121663
Decided: 03/28/2025
Mandate Issued: 04/24/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2025 OK CIV APP 12, __ P.3d __

 

TOM HADDAN, GARY CUDE and BRUCE GINN, Individuals, Plaintiffs/Appellants,
and
VINCE SCOUFOS, ELAINE HADDAN, CHARLES CHAPPLE, J.R. SPENCE and LARRY OGDEN, Individuals, Plaintiffs,
v.
THE COVES MASTER ASSOCIATION, INC., an Oklahoma Not for Profit Corporation; GRAND BLUFFS DEVELOPMENT COMPANY, an Oklahoma General Partnership; COVES GOLF CLUB, LLC, an Oklahoma Limited Liability Company; RUSSELL BRIGGS; RICHARD THORNTON; CHARLOTTE CAUDELL; MONTIE BROOME; GARY BURKE; JACK BINNS; DARRELL WILSON; DEWAYNE ALLEN; GAY CAMPBELL; TOM PALMER; DAN HOUSTON; RODNEY RATCLIFF; CAROL SEACAT and DAVID KETELSLEGER, Individuals, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
DELAWARE COUNTY, OKLAHOMA

HONORABLE JENNIFER MCAFFREY, TRIAL JUDGE

AFFIRMED AS MODIFIED AND REMANDED 
FOR FURTHER PROCEEDINGS

Donald A. Lepp, Samuel T. Black, Jack E. Schaefer, DRUMMOND LAW, PLLC, Tulsa, Oklahoma, For Plaintiffs/Appellants

Jake G. Pipinich, Kimberly A. Stevens, PIERCE COUCH HENDRICKSON, For Defendant/Appellee

BAYSINGER & GREEN, Tulsa, Oklahoma, For The Coves Master Association, Inc.

Robert Alan Rush, LOGAN & LOWRY, LLP, Vinita, Oklahoma, For Defendant/Appellee Grand Bluffs Development Company

Scott F. Lehman, Ashley M. Bibb, LATHAM, KEELE, LEHMAN, RATCLIFF, CARTER & CLARKE, P.C., Tulsa, Oklahoma, For Defendant/Appellee Coves Golf Club, LLC

JOHN F. FISCHER, JUDGE:

¶1 Three members of the Coves Master Association, Inc. appeal the dismissal of their petition in this derivative litigation. 

BACKGROUND

¶2 Grand Bluffs Development Company is the developer of The Coves at Bird Island, a planned community located on the shores of Grand Lake in Delaware County, Oklahoma. According to the Master Association Declaration executed by Grand Bluffs on November 10, 1981, The Coves Master Association, Inc. was to be formed as an Oklahoma non-profit corporation. The Association was required to "operate and maintain the Common Areas designated by Grantor . . . ." In addition, the Association was required "to accept, own, operate and maintain the Common Areas and all other property, real and personal . . . conveyed to or leased to the Association by Grantor." The Association was also to provide certain "recreational, security and other services" for The Coves and its residents after Grand Bluffs relinquished that responsibility. When the Declaration was filed, the Common Areas, residential lots and other real property later transferred to the Association were owned by Grand Bluffs.

¶3 The Declaration states that the Association would be governed by its Articles of Incorporation and Bylaws, to the extent those documents did not conflict with the Declaration, and refers to a Board of Directors having certain powers to act on behalf of the Association. The Association was formed by Grand Bluffs on November 12, 1981. 

¶4 In addition to the residential community, Grand Bluffs also built a Sewage Treatment Facility and golf course within The Coves. The golf course was intended to be available as an amenity for the Association's members. The golf course was owned by Grand Bluffs and operated by its wholly owned subsidiary, The Coves Golf Club, Inc. Some, but not all, of the Association's members joined the Golf Club.

¶5 When this litigation began, the Association consisted of several hundred members who owned residential lots in The Coves and were entitled to vote on matters involving the Association. By virtue of its ownership of unsold lots in The Coves, Grand Bluffs was also a voting member of the Association.

¶6 The events precipitating this litigation began in 2017 when Grand Bluffs notified the Association's Board of Directors that it intended to turn over operation of The Coves to the Association and that it no longer intended to operate, and therefore proposed to sell, the golf course. Grand Bluffs provided the Association's Board with financial information at the Board's February 27, 2017 meeting. The information showed that the Golf Club had been operating at a deficit for several years. At that meeting, the Board voted to increase Association members' dues by $25 per month for twelve months and provide those funds as temporary financial support for the operation of the golf course. However, after receiving criticism, the Board rescinded that action at its April 28, 2017 meeting before collecting any additional dues.

¶7 The dues and golf course issues were presented to the members at the Association's April 29, 2017 annual meeting. A substantial majority of the members voted to approve a $25 per month increase in their dues for a period of twenty-four months to be dedicated to support the Golf Club. At that meeting, Grand Bluffs also advised the members of its plan to turn over operation of The Coves to the Association and recommended that the Association buy the golf course.

¶8 The Board formed an independent task force to evaluate the potential purchase of the golf course. The Task Force employed attorneys, appraisers and surveyors with funds loaned by individual members. The Task Force held five informational "town hall" meetings and conducted a survey of the members willing to respond. The Task Force reported its findings and recommendations to the members in a report dated October 2, 2018. The Task Force recommended that the Association purchase Grand Bluffs' assets, including the golf course.

¶9 The Association's Board called a special meeting of the membership for December 15, 2018, to discuss the findings of the Task Force. On the agenda for that meeting was a resolution to authorize the Board to, among other things: (1) enter into an agreement with Grand Bluffs for the purchase of the unsold lots in The Coves owned by Grand Bluffs, (2) negotiate the purchase of the golf course from Grand Bluffs, and (3) negotiate a triple-net lease for the future operation of the golf course and attendant facilities with Coves Golf Club, LLC, a newly formed entity financially supported in part by a small number of Association members. The members approved that resolution by a vote of approximately three to one. According to the Board, four members of the Association who were present at the meeting and eligible to vote voluntarily recused themselves from voting on the resolution because they were investors in the new Golf Club. The Board reported on the progress of these negotiations in advance of the April 13, 2019 annual meeting and appears to have completed the acquisitions approved by the members by May 1, 2019.

¶10 However, not all members of the Association supported the acquisitions authorized by the resolution. In two letters written to the Board in November and December of 2018, one member expressed several concerns, some general and some unique to the property she owned in The Coves. She also requested additional information related to the proposed transactions. In a letter dated April 17, 2019, that member, an attorney, stated that she now represented twelve other members of the Association and notified the Association's Board that they were demanding, pursuant to 12 O.S.2021 § 2023.1

¶11 The defendants filed motions to dismiss which the district court granted as reflected in an order dated January 21, 2020. The court cited this Court's Opinion in Kurtz v. Clark, 2012 OK CIV APP 103290 P.3d 779Zapata Corp. v. Maldonado, 430 A.2d 779 (Del. 1981) as the basis for its decision. 

¶12 On January 31, 2020, the Plaintiffs filed a Motion to "Correct, Open and Modify" the January 21, 2020 Order. The Plaintiffs argued that dismissal of their derivative claim did not dispose of their claims against the directors or their request to have a receiver appointed. They also sought leave to amend their petition because the January 21 Order did not provide that their petition was dismissed with prejudice. That motion was argued on June 26, 2020, and taken under advisement.

¶13 Not until April 24, 2023, while the Motion to Correct, Open and Modify filed by all Plaintiffs was still being considered by the district court, did the appellants, Cude, Ginn and Tom Haddan file a "Motion for Leave to File Amended Petition." 

¶14 The district court's September 7, 2023 Journal Entry of Judgment disposed of the two pending motions. The court denied both motions and stated it was the court's final order as to those motions. Both the district court's January 21, 2020 Order and its September 7, 2023 Journal Entry of Judgment are the subject of this appeal.

STANDARD OF REVIEW

¶15 Generally, when a defendant's motion to dismiss attaches exhibits and other documents, the court is required to convert the motion to one for summary judgment pursuant to 12 O.S.2021 § 201212 O.S.2021 § 2010Farley v. City of Claremore, 2020 OK 30465 P.3d 1213Accord Gaylord Entm't Co. v. Thompson, 1998 OK 30958 P.2d 128

¶16 The purpose of a motion to dismiss a petition for failure to state a claim is to test the law that governs the claim rather than the facts asserted in support of that claim. Kirby v. Jean's Plumbing Heat & Air, 2009 OK 65222 P.3d 21Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)). On review of an order dismissing a petition all allegations in the petition are taken as true. Gens v. Casady Sch., 2008 OK 5177 P.3d 565Indiana Nat'l Bank v. Dep't of Human Servs., 1994 OK 98880 P.2d 371Johnson v. CSAA Gen. Ins. Co., 2020 OK 110478 P.3d 422

ANALYSIS

¶17 As evident from their Petition, the essence of the Plaintiffs' case is a derivative action filed pursuant to 12 O.S.2021 § 2023.1Weston v. Acme Tool Inc., 1968 OK 7441 P.2d 959Dobry v. Yukon Elec. Co., 1955 OK 281290 P.2d 13512 O.S.2021 § 2023.1See also Hargrave v. Can. Valley Elec. Coop., 1990 OK 43792 P.2d 50

I. The Demand Requirement

¶18 The Plaintiffs do not argue that they are excused from making demand on the Association's Board of Directors. 

[T]he purpose of the demand requirement is to ensure that the corporate board's management decisions are respected, [and] a critical inquiry in any shareholder's derivative suit is whether the board, upon receiving a shareholder's demand, conducted an investigation in good faith and made a determination that initiating litigation was not in the corporation's best interest.

Egleston ex rel. Chesapeake Energy Corp. v. McClendon, 2014 OK CIV APP 11318 P.3d 210Kurtz v. Clark, 2012 OK CIV APP 103290 P.3d 779See also Spiegel v. Buntrock, 571 A.2d 767, 773 (Del. 1990) (citing Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 730 (Del. 1988)) (pre-suit demand ensures the stockholder affords the corporation the opportunity to address an alleged wrong prior to litigation). "The entire foundation of the demand requirement is that litigation on behalf of the corporation belongs to the corporation, which is managed by the board." Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan v. Andreotti, 2015 WL 2270673, at *31 (Del. Ch. May 8, 2015), aff'd, 132 A.3d 748 (Del. 2016).

¶19 To satisfy the demand requirement in Oklahoma, the petition must "allege with particularity" what the plaintiff did to notify the corporation of the dispute and the efforts undertaken to resolve the matter before filing a derivative action. 12 O.S.2021 § 2023.1Spiegel v. Buntrock, 571 A.2d at 773.

¶20 The April 17, 2019 letter lists eight actions the original plaintiffs requested the Board to take: 1) "retrieve" the $25 per month dues increase approved by the members and paid to Grand Bluffs or the Golf Club, because that is not permitted by the Declaration; 2) Compel Grand Bluffs to convey the Sewage Treatment Facility to the Association; 3) Delete from the budget any costs for maintenance or repair of the Sewage Treatment Facility because those costs are to be paid by the "sewered lots;" 4) Rescind the March 11, 2019 assessment adopted by the Board to pay for the Task Force because the Task Force was not approved by the members; 5) Prevent conflicts between members of the Board who have an interest in the Golf Club; 6) Conduct a new vote of the members on the purchase of the golf course after rectifying alleged inaccuracies in the information provided to members; 7) Conduct a vote of the members on the proposed budget and dues; and 8) Comply with Bylaws section 4.7 which limits golf course funding by members of the Association to $25 per year, not $25 per month.

¶21 As noted, the Board responded to the Plaintiffs' April 17 demand letter with a letter dated May 15, 2019. In that letter, the Board stated its general disagreement with some of the contentions asserted in the April 17 letter. The Board pointed to several specific provisions in the Declaration and the Association's Bylaws which authorized, in its opinion, the use of Association funds for the support of recreational activities like the golf course and the $25 per month golf course assessment. The Board rejected the demand to retrieve the $25 assessment and rescind the March 11, 2019 assessment.

¶22 The Board also disputed the existence of any conflict of interest between Association Board members with respect to issues involving the golf course or the new Golf Club, but noted that members of the Board who were investors in or members of the new Golf Club had abstained from voting on matters related to the golf course. And, the Board took issue with the assertion that it was not adhering to the Bylaws or Declaration, stating it had "strictly complied" with those documents in the past and would do so in the future. The Board stated that it had obtained a conveyance of the Sewage Treatment Facility, was analyzing the cost of that Facility and would inform the Association's shareholders of any decision made regarding funding the maintenance of that facility. Finally, the Board stated it would "promptly respond" to the request to review Association documents when it received a written request which satisfied the requirements of the applicable statute. See 18 O.S. 1065 (requirements for demanding inspection of corporate books and records).

¶23 The Plaintiffs did not respond to the Board's May 15 letter, nor did they submit a statutorily compliant document request. Instead, they filed this action five months later. Plaintiffs' Petition asserts five "causes of action," all arising out of the same transaction or occurrence. However, "[o]nly a single cause of action can be predicated on the same set of facts, but different theories of liability may be pressed in support of each claim alleged." Hadnot v. Shaw, 1992 OK 21826 P.2d 978

¶24 Further, the Plaintiffs' Petition encompasses more issues than those raised in their April 17 demand letter. For example, Paragraph 73 of Plaintiffs' Petition complains about Association Board action in exceeding the purchase price for Grand Bluffs' assets, including the golf course, authorized by the members. In paragraph 57, Plaintiffs allege the Board: 1) did not follow the members' authorization regarding the terms of the Lease for the operation of the golf course and 2) entered into a Master Leasing and Services Agreement, which improperly transferred Association assets to Grand Bluffs. However, nothing in the Plaintiffs' April 17 demand letter addresses these matters or demands that the Board take any action with respect thereto.

¶25 Delaware Chancery Court Rule 23.1 requires shareholders to "exhaust intracorporate remedies" before asserting a claim on behalf of the corporation. Spiegel v. Buntrock, 571 A.2d 767, 773 (Del. 1990). "[B]y promoting this form of alternate dispute resolution, rather than immediate recourse to litigation, the demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) (overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000)). The language of 12 O.S.2021 § 2023.1Hargrave v. Can. Valley Elec. Coop., 1990 OK 43792 P.2d 50

¶26 A corporation's board of directors cannot determine the merits of pursuing litigation it has not been requested to file. Therefore, all allegations in the Petition not raised in the Plaintiffs' April 17, 2019 demand letter were properly dismissed and the district court's rulings in that regard are affirmed.

II. The Plaintiffs' Direct Action

¶27 Further, the Plaintiffs' Second, Third and Fourth "causes of action" allege misrepresentation, breach of contract and unjust enrichment. To the extent these claims were raised in the Plaintiffs' April 17 demand letter, they are asserted directly against individuals who were directors of the Association during the time these events took place. The Plaintiffs do not identify by name any individual director allegedly responsible for a specific wrongdoing. Nonetheless, all of these claims fail.

¶28 This Court first addressed this issue in Watkins v. Hamm. "The sole issue in this appeal is whether Oklahoma recognizes a direct action by shareholders against corporate officers and directors . . . ." 2018 OK CIV APP 2419 P.3d 353

¶29 We discussed Gentile v. Rossette, 906 A.2d 91 (Del. 2006), the case relied on by the plaintiffs in Watkins for their direct-action theory. Gentile recognized a claim by shareholders directly against corporate officers or directors if the shareholder had suffered a "special injury" from the conduct of those officials. Gentile's "special injury" claim created an exception to the existing Delaware law analysis which had previously established the test for determining whether a shareholder's claim was direct or derivative based on two questions: "(1) who suffered the alleged harm (the corporation or the stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" Tooley v. Donaldson, Lufkin & Jennette, Inc., 845 A.2d 1031, 1033 (Del. 2004).

¶30 However, we noted that Gentile had "been the subject of confusion and criticism in the courts of Delaware, [and] that case may be on the verge of being abrogated or, at least, significantly limited." Watkins, 2018 OK CIV APP 2 at ¶ 22, 419 P.3d at 360. We decided to "wait until Delaware decides what its law is" before recognizing a direct action against officers and directors in shareholder litigation prosecuted pursuant to Oklahoma law. Id.

¶31 The Delaware Supreme Court has now decided when shareholders may pursue a direct action against corporate officers and directors. See Brookfield Asset Mgmt., Inc. v. Rosson, 261 A.3d 1251 (Del. 2021) (overruling Gentile v. Rossette, 906 A.2d 91 (Del. 2006)). Now, under Delaware law, "to plead a direct claim under Tooley, a 'stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.'" Id. at 1256.

¶32 We follow Brookfield here. First, the allegations in the Plaintiffs' Petition fail to identify any duty the directors owed directly to them individually and which the Plaintiffs allege that the defendant directors breached. Second, if the Plaintiffs prevail on these claims, it will be because they have proven injury to the Association, e.g., the Association "overpaid" Grand Bluffs for its assets, spending unnecessary Association funds to acquire those assets. No individual injury suffered only by the Plaintiffs is alleged. In fact, as stated in their response to the Association's motion to dismiss: "The Plaintiffs seek nothing for themselves in their Petition." (Plaintiffs' Response to the Association's Motion to Dismiss, ROA Doc. 12, p. 7). Consequently, the Plaintiffs' Petition fails to state a direct action against the directors of the Association pursuant to the Tooley and Brookfield tests.

¶33 Further, the only Oklahoma authority cited by the Plaintiffs in support of their claim against the individual directors is 18 O.S.2021 § 867

¶34 Even if the Plaintiffs' allegations were sufficient, they have not shown that they are the ones to prosecute any violation of section 867.

"[A] stockholder of a corporation has no personal or individual right of action against third persons, including officers and directors of the corporation, for a wrong or injury to the corporation which results in the destruction or depreciation of the value of his stock, since the wrong thus suffered by the stockholder is merely incidental to the wrong suffered by the corporation and affects all stockholders alike."

Kurtz v. Clark, 2012 OK CIV APP 103290 P.3d 779Dobry v. Yukon Elec. Co., 1955 OK 281290 P.2d 135

¶35 Further, Delaware has statutes similar to section 867. See Del. Code Ann. tit. 8, § 102 (permitting articles of incorporation to include a provision "eliminating or limiting the personal liability of a director . . . to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director," subject to certain exceptions) and Del. Code Ann. tit. 10, § 8133, "Limitation from Civil Liability for Certain Nonprofit Organization Volunteers" (providing that no director of a nonprofit corporation "shall be subject to suit directly, or derivatively . . . for civil damages under the laws of Delaware resulting from any negligent act or omission performed during or in conjunction with an activity of such [corporation]"). The exceptions to these grants of immunity are similar to those in section 867. And, despite these statutory provisions, Delaware plaintiffs in derivative litigation have no individual right of action for a breach of these statutes unless they can establish that they "can prevail [in the absence of] an injury to the corporation.'" Brookfield Asset Mgmt., Inc. v. Rosson, 261 A.3d 1251, 1256 (Del. 2021).

¶36 The district court's dismissal of the Plaintiffs' direct claims against individual members of the Association's Board of Directors is affirmed.

III. The Plaintiffs' Derivative Action

As discussed, the primary aspect of the Plaintiffs' claim is a derivative action prosecuted as members of the Association pursuant to 12 O.S.2021 § 2023.1

In a derivative action brought by one or more . . . members to enforce a right of a corporation . . . the corporation . . . having failed to enforce a right which may properly be asserted by it, the petition shall be verified and shall allege that the plaintiff was a . . . member at the time of the transaction of which he complains . . . .

Id. "The nature of the derivative action is two-fold. First, it is the equivalent of a suit by the shareholders to compel the corporation to sue. Second, it is a suit by the corporation, asserted by the shareholders on its behalf, against those liable to it." Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 730 (Del. 1988) (quoting Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984) (overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000)).

¶37 The Plaintiffs' Petition asserts three claims on behalf of the Association against third parties allegedly liable to the corporation. Against the defendant Golf Club, the Plaintiffs seek return of (1) in excess of $270,000 paid to the Golf Club from the $25 per month assessment approved by the members, and (2) cancellation of the Golf Club Lease negotiated by the Board. Against Grand Bluffs, they seek recovery of $183,346.86 allegedly paid in excess of the amount approved by the members for purchase of Grand Bluffs' assets. The Plaintiffs have also sued to compel Grand Bluffs to transfer ownership of the Sewage Treatment Facility to the Association.

¶38 Regarding the Sewage Treatment Facility, when filing a derivative action, plaintiffs must not only sue "to enforce a right of a corporation" but also show that the corporation has "failed to enforce a right which may properly be asserted by it." 12 O.S.2021 § 2023.1In re Smith & Wesson Holding Corp. Derivative Litig., 743 F. SupP.2d. 14, 21 (D. Mass. 2010).

¶39 Further, inclusion of this claim in their Petition suggests that the Plaintiffs ignored the Board's response to their demand letter as well as their pre-suit obligation to resolve the dispute without litigation where possible. The demand requirement is not a "mere formality." Id. "A shareholder derivative action is an action of last resort." Id. at 18 (quoting Gonzalez Turul v. Rogatol Distrib., Inc., 951 F.2d 1, 2 (1st Cir. 1991)). Consequently, the Petition fails to state a derivative action on behalf of the Association against Grand Bluffs with respect to ownership of the Sewage Treatment Facility, and this claim was properly dismissed.

¶40 As to the claim against Grand Bluffs for over-payment for its assets, the alleged over-payment was not raised in the Plaintiffs' April 17 demand letter and was properly dismissed. For the same reason, any claim against the Golf Club for rescission of its lease was properly dismissed.

¶41 The problem with the Plaintiffs' claim against the defendant Golf Club for refund of the $270,000 is that the $25 monthly assessment from which those funds were derived resulted from a vote of the members of the Association, not action by the Board.

The United States Supreme Court has noted that the shareholder derivative action "could, if unrestrained, undermine the basic principle of corporate governance that the decisions of a corporation--including the decision to initiate litigation--should be made by the board of directors or the majority of shareholders."

Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 730 (Del. 1988) (quoting Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 531, 104 S. Ct. 831, 835 (emphasis added)). A majority of the Association's members approved the decision the Plaintiffs challenge in their derivative action. And their Petition fails to "allege with particularity the efforts . . . made by the plaintiff to obtain the action he desires . . . if necessary, from . . . the members." 12 O.S.2021 § 2023.1

¶42 The Association's governing documents provide members with pre-suit remedies that could resolve disagreements prior to litigation, if pursued. For example, the Association's Declaration and its Bylaws provide that there will be an annual meeting of the members of the Association. The Bylaws attached to the Plaintiffs' Petition state that the annual meeting will be held on the second Saturday in April. The Plaintiffs do not allege that they proposed reversal of the members' December 2016 decision to approve the $25 monthly assessment for temporary support of the golf course at the April 2017 annual meeting or any subsequent annual meeting of the Association.

¶43 In addition, the Plaintiffs do not allege that they attempted to call a special meeting of the Association to attempt to change the minds of their fellow members about the wisdom of the $25 assessment before filing this litigation. And, the Plaintiffs now have the information they contend the Board misrepresented or did not disclose to the members prior to the vote on that assessment. When the Board rejected their demand to "retrieve" the $25 assessment, the Plaintiffs had the opportunity to call a special meeting to persuade the members to rescind that assessment. They did not.

¶44 Nonetheless, the Declaration and the Association's Bylaws specifically authorize the Plaintiffs to call a special meeting of the Association's members if they have the support of twenty percent of their fellow members. Of the several hundred members of the Association, only three have prosecuted this appeal. If these three members do not "fairly and adequately represent" the remaining similarly situated members, it is questionable that they should be permitted to pursue a derivative action on their own. "The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the . . . members similarly situated in enforcing the right of the corporation or association." 12 O.S.2021 § 2023.1

¶45 Finally, even assuming that the $25 assessment for support of the golf course was not permitted by the Declaration or Bylaws, as the Plaintiffs contend, this question of law cannot be resolved in the Plaintiffs' favor on the basis of this record. In certain circumstances, "shareholder approval can cure the invalidity of an otherwise voidable act . . . ." Int'l Bhd. of Teamsters v. Fleming Co., 1999 OK 3975 P.2d 907Michelson v. Duncan, 407 A.2d 211, 218-20 (Del. 1979)). See also Johnson v. Brown, 2024 OK CIV APP 18Hernandez v. Banco De Las Americas, 570 P.2d 494, 497-98 (Ariz. 1977)) (recognizing that corporate bylaws "may be amended informally as well as formally, orally or in writing . . . by acts as well as by words, and may be evidenced by a course of proceeding or conduct on the part of the corporation inconsistent with the by-laws claimed to have been amended or repealed")

¶46 Derivative actions are equitable in nature. Steinway v. Griffith Consol. Theatres, 1954 OK 156273 P.2d 872

[B]efore the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes.

Hawes v. City of Oakland, 104 U.S. 450, 460--61, 26 L. Ed. 827 (1882). The Plaintiffs' failure to, at least, attempt to raise the $25 dues issue at an annual meeting or call a special meeting to ask the members to reconsider that assessment is inconsistent with the equitable nature of the remedy they pursue. See Schoon v. Smith, 953 A.2d 196, 202 (Del. 2008) (citation omitted) (stating that derivative actions are created "solely for the purpose of preventing injustice where it is apparent that material corporate rights would not otherwise be protected"). The Plaintiffs' Petition and the documents incorporated therein fail to show the "injustice" of a decision by a majority of the members, the basis for the Plaintiffs' claim on behalf of the Association against the defendant Golf Club. This claim was properly dismissed.

IV. Plaintiffs' Proposed Amended Petition

¶47 The Plaintiffs also appeal the district court's denial of their Motion for Leave to File Amended Petition after new counsel began to represent them. Attached to the Motion is the proposed amended petition. The proposed amended petition suffers from many of the same defects found in the original Petition. First, the claims in the proposed amended petition are based on alleged misconduct regarding the purchase price of the golf course, the lease of the golf course and the Master Leasing and Services Agreement for operation of the golf course, none of which were addressed in the Plaintiffs' April 17 demand letter. Second, all of the claims in the proposed amended petition appear to be asserted only against the defendant directors -- defendants against whom they have not stated a direct cause of action.

¶48 Consequently, the district court did not err in denying the Plaintiffs' Motion for Leave to File Amended Petition. However, because of the equitable nature of the derivative action remedy, the Plaintiffs should be permitted to file an amended petition if they can state a derivative action consistent with the applicable law discussed in this Opinion.

V. Business Judgment Rule

¶49 Finally, we address the Association and defendant directors' argument in their motion to dismiss that the business judgment rule requires dismissal of the Plaintiffs' Petition. The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) (overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000)). Accord Carter v. Schuster, 2009 OK 94227 P.3d 149Spiegel v. Buntrock, 571 A.2d 767, 773-74 (Del. 1990) (quoting Aronson v. Lewis, 473 A.2d at 813).

¶50 However, the Plaintiffs' April 17 demand letter was insufficient to put the Board on notice of all facets of the litigation the Plaintiffs were asking the Board to file. As a result, the Plaintiffs' "demand" did not require a response from the Board which would involve their exercise of judgment. Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 782 (Del. 1988) (explaining that the business judgment rule "is not relevant in corporate decision making until after a decision has been made").

¶51 Consequently, with one exception, this litigation has not reached the stage where the judgment of the Board of Directors can be evaluated pursuant to the business judgment rule. The Board did reject the Plaintiffs' demand to rescind the March 11, 2019 assessment declared by the Board to engage the Task Force. That decision is protected by the business judgment rule and the Plaintiffs' allegations fail to overcome the presumption that, in employing an independent committee to evaluate the golf course transaction for the members, the Board was acting "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Spiegel v. Buntrock, 571 A.2d at 774. That aspect of the Plaintiffs' Petition was properly dismissed.

¶52 As previously discussed, the Plaintiffs challenge decisions by a majority of their fellow members, not the directors of the Association. "[T]he business judgment rule operates only in the context of director action." Aronson v. Lewis, 473 A.2d 805, 813 (Del. 1984) (overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000)). To the extent the allegations in any amended petition challenge decisions by the Association's Board of Directors, application of the business judgment rule can be determined at that time.

CONCLUSION

¶53 The Plaintiffs' Petition, informed by the documents attached thereto, fails to state a derivative claim on behalf of the Association. 

¶54 AFFIRMED AS MODIFIED AND REMANDED FOR FURTHER PROCEEDINGS.

WISEMAN, P.J., concurs, and BLACKWELL, J., concurs in part and dissents in part.

FOOTNOTES

See 18 O.S.2021 § 1004.1

Johnson v. Brown, 2024 OK CIV APP 18554 P.3d 781

McKee v. Rodgers, 156 A. 191, 193 (Del. Ch. 1931). Here, the Plaintiffs do allege that despite their demand, "their failure to obtain any action from the [Board] is a result of the conflicts of interest existing on the [Board] . . . ."

Where, as here, a stockholder makes a demand on the board to consider or bring legal action, the stockholder has necessarily conceded that, at least at this stage of the pleadings, he cannot allege facts showing that the board is disqualified from the decision by self-interest or lack of independence.

Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan v. Andreotti, 2015 WL 2270673, at *25 (Del. Ch. May 8, 2015). It is clear from their Petition that the Plaintiffs disagree with certain actions taken by the Board, and particularly the recommendations of the board-appointed Task Force regarding purchase of the golf course. "But a disagreement, however vehement, with the conclusion of an independent and adequately represented committee is not the same as pleading particularized facts that create a reasonable doubt that the Board acted in what it perceived as the best interests of the corporation." Id. at *32. The Plaintiffs' Petition fails to plead the requisite "particularized facts" to bypass the Board's role in managing the business and the litigation of the Association. Therefore, demand on the Association's Board of Directors was not excused.

18 O.S.2021 § 1071

BLACKWELL, J., dissenting in part:

¶1 I join all but Part IV of the Court's opinion. However, because I also agree with the Court that "the district court did not err in denying the Plaintiffs' Motion for Leave to File Amended Petition," I respectfully dissent from the Court's remand, which allows such a filing "because of the equitable nature of the derivative action remedy." Opinion, ¶ 48. Because, in my view, the Court's opinion does not expand the plaintiffs' ability to state a meritorious derivative action under these circumstances--and because the plaintiffs have already had two opportunities in four-and-a-half years to state a cause of action--equity demands we end this litigation, not prolong it.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105